**Osiel Valdez ORTIZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 002–95.

Court of Criminal Appeals of Texas, En Banc.

Sept. 25, 1996.

Osiel Valdez Ortiz, Huntsville, pro se.

Scott Sullivan, Asst. Dist. Atty., Brownsville, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge.

The issues presented in this case are whether the Court of Appeals correctly held that jeopardy attaches in a guilty plea proceeding when the trial court accepts the plea agreement and whether the Court of Appeals correctly found that the trial court had not accepted the plea agreement when it accepted the guilty plea.

Appellant was indicted for aggravated robbery. On July 28, 1989, in accord with a plea agreement, Appellant pled guilty to the lesser included offense of robbery with no agreement as to punishment. The trial court "accept[ed]" the guilty plea, admonished Appellant under Article 26.13, V.A.C.C.P., and stated, "The Court is hereby going to accept it. Now, I'm not going to be making any decisions today. I'm going to be deferring findings and ordering a pre-sentence investigation report and schedule this matter for further hearing. . . ."

On September 1, 1989, Appellant appeared before the trial judge who stated that he had previously accepted the plea, made no findings, and ordered a pre-sentence investigation report. He inquired whether Appellant and his attorney had been provided with the report and permitted Appellant to present argument. Then the judge stated:

In reviewing all the facts, the pre-sentence investigation reports that were given to me on each respective defendant, I quite frankly, at this time am going to announce to all of you that I cannot in good conscience accept the recommendations that have been made.

The judge continued:

[T]he Court cannot in good conscience enter any findings to the lesser included offense.

So I am going to instruct the respective attorneys to withdraw the pleas of guilty in behalf of their clients and set this matter for trial. And if you don't, I will enter it in your behalf.

Appellant's attorney requested time to confer with Appellant, after which the judge asked Appellant if his attorney was withdrawing his guilty plea with Appellant's advice and consent. Appellant stated that he was.[1]

Several weeks later Appellant pled nolo contendere to aggravated robbery and the trial court assessed punishment at confinement for fifty years. Appellant had no plea agreement. Under the original plea agreement, if Appellant had been sentenced for the lesser included offense of robbery, the maximum punishment would have been confinement for twenty years.

The Court of Appeals affirmed the conviction. *Ortiz v. State,* 885 S.W.2d 271 (Tex. App.—Corpus Christi 1994). We granted Appellant's petition for discretionary review to address his contention that his conviction was barred by double jeopardy provisions of the Texas and United States Constitutions.[2]

1. The dissent claims that the record establishes various matters regarding unfavorable publicity and petition drives to influence the trial judge. Although the attorney for appellant's co-defendant made statements to the court that would to some degree support such a conclusion, and the trial court even commented about some of the matters, the bald statement that "the record establishes" these matters overstates, we think, what actually happened. Also, we do not believe that the record supports the dissent's statement that "The prosecutor conceded the intense publicity and community feeling" surrounding the

case. And, although the trial court gave several reasons for ordering the plea withdrawn, the dissent quotes only *one,* and that one out of context. The dissent's criticism of the trial court is unjustified.

Finally, even if the record *did* establish what the dissent claims it does, it would be utterly irrelevant to the determination of the issue in this case.

2. The Fifth Amendment to the United States Constitution states, in pertinent part, "[N]or shall

## ACCEPTANCE OF THE PLEA AGREEMENT

The Court of Appeals held that any plea of guilty as part of a plea agreement is tentative until the trial court approves or rejects the agreement. The court found that in the instant case the trial judge's acceptance of the guilty plea before approval of the agreement was premature and tentative because even though the trial judge "accepted" the plea, he then stated that he would not make any decision and was going to be "deferring findings." The Court of Appeals concluded that the trial court did not approve or reject the plea agreement at the time of Appellant's guilty plea to robbery. Further, the trial court's use of the term "accept the plea" was not an adjudication of Appellant's guilt on the robbery plea.

Appellant argues that when the trial judge accepted the guilty plea to robbery, he necessarily accepted the plea agreement which consisted of Appellant's guilty plea in return for a reduction in the offense from aggravated robbery to robbery. Article 26.13(a)(2), requires that before "accepting" a guilty plea, the trial court shall admonish the defendant of several matters, including:

> (2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements be-

tween the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere.

■ In the instant case the trial judge "accepted" the guilty plea to robbery, but did not make any finding on this plea and did not accept or reject the plea agreement. The trial judge would have more accurately followed Art. 26.13 had he not stated that he accepted the plea without *also* making a finding on the plea agreement. Essentially, the trial judge accepted the plea conditionally while he deferred a final decision until the pre-sentence investigation was complete. He did not adjudicate guilt or accept the plea agreement. See and compare *United States v. Sanchez,* 609 F.2d 761 (5th Cir.1980).[3]

A plea agreement is a contractual arrangement. Until all of the necessary parties agree to the terms of the contract, the agreement is not binding. Art. 26.13(a)(2). Based on the record of the initial plea hearing we agree with the Court of Appeals that the trial judge never accepted the plea agreement. Therefore, the contract of the plea agreement was never binding on the parties.

any person be subject for the same offence to be twice put in jeopardy of life or limb."

Article I, § 14 of the Texas Constitution provides, "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

3. The dissent concludes that a "common-sense" reading of the record supports a finding that the trial judge necessarily accepted the plea agreement when he "accepted" the guilty plea. The dissent derives this conclusion in part from the language of Article 26.13(a)(2). That provision notwithstanding, we believe the facts in the record show otherwise, as explained in the body of this opinion and in the Court of Appeals' opinion. Moreover, whether the trial judge accepted the *plea agreement* when he "accepted" the guilty plea is largely a matter of factual interpretation of the record. Such factual interpretation is predominantly the domain of the Court of Ap-

peals. *Arcila v. State,* 834 S.W.2d 357, 360 (Tex. Crim.App.1992). The dissent's conclusion that the Court of Appeals erred in holding that the trial judge did not in fact accept the plea agreement is really a complaint that the Court of Appeals "somehow managed to get it wrong." *Id.* at 361. Finally, the dissent's reliance upon *Perkins v. Court of Appeals,* 738 S.W.2d 276 (Tex. Crim.App.1987) is misplaced. In *Perkins,* the plea agreement called for a "cap" of twenty-five years. *Id.* at 279. The trial judge *expressly* accepted that plea agreement, and the Court of Appeals so found. *Id.* at 279 & 282. As the dissent concedes, there was no express acceptance of the plea agreement in the present case. At least one other Court of Appeals has distinguished *Perkins* on the basis that a trial court's "acceptance of the plea" did not constitute acceptance of the plea agreement. *Mayfield v. Giblin,* 795 S.W.2d 852 (Tex.App.—Beaumont 1990), *disapproved on other grounds by, Papillion v. State,* 908 S.W.2d 621, 624 (Tex.App.—Beaumont 1995).

## DOUBLE JEOPARDY

Having determined that the plea agreement was not accepted and thus did not become binding, we now address Appellant's double jeopardy claim under both the United States and Texas Constitutions. Appellant contends jeopardy attached when he entered his guilty plea and the trial court accepted the plea. Therefore, the second plea proceeding in which Appellant pled nolo contendere to aggravated robbery is impermissible. The Court of Appeals held that in a negotiated plea case jeopardy attaches when the trial court accepts the plea agreement. We agree with the Court of Appeals.

■ The double jeopardy clause protects against a second prosecution for the same offense after acquittal or conviction; and it protects against multiple punishments for the same offense. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The broad premise underlying double jeopardy protection is that the government should not be able to subject an individual to embarrassment and anxiety by repeated attempts to convict.

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

■ To implement or enforce this protection courts have "define[d] a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975). In state and federal courts jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

In a bench trial in federal court jeopardy attaches when the court begins to hear evidence. *Serfass,* 420 U.S. at 388, 95 S.Ct. at 1062, 43 L.Ed.2d at 274. In Texas jeopardy attaches in a bench trial when the defendant pleads to the indictment. *State v. Torres,* 805 S.W.2d 418 (Tex.Crim.App.1991). The reason for the particular point of attachment is that the double jeopardy prohibition does not apply until a defendant is " 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Serfass,* 420 U.S. at 388, 95 S.Ct. at 1062, 43 L.Ed.2d at 274.

In *Crist* the Supreme Court summarized the reasons for finding jeopardy attached when the jury was empaneled and sworn to be "the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury." *Crist,* 437 U.S. at 38, 98 S.Ct. at 2162, 57 L.Ed.2d at 33. All of these reasons support the point of jeopardy attachment as the time the defendant is put to trial, on a plea of not guilty, before the trier of facts. At that point the trial has begun before the chosen tribunal on the contested issue of the defendant's guilt or innocence.

Consistent with this idea is the long-established rule in Texas that jeopardy attaches when the defendant pleads to the charging instrument. At that point the issue is joined for the jury to determine. *Vardas v. State,* 518 S.W.2d 826 (Tex.Crim.App.1975); *Ochoa v. State,* 492 S.W.2d 576 (Tex.Crim.App. 1973); *Fann v. State,* 138 Tex.Crim. 580, 137 S.W.2d 1019 (1940); *Steen v. State,* 92 Tex. Crim. 99, 242 S.W. 1047 (1922); *Yerger v. State,* 41 S.W. 621 (Tex.Crim.App.1897). This rule was modified in response to *Crist* because the requirement of the United States Constitution mandates that in a jury trial jeopardy attaches when the jury is selected and sworn, which is earlier in time than when a defendant pleads to the charging instrument. See *McElwee v. State,* 589 S.W.2d 455 (Tex.Crim.App.1979). However, the rationale for jeopardy attachment in Texas is consistent with the idea that jeopardy attaches when the defendant is put to trial before the trier of fact because in Texas if a defendant did not enter a plea before the

trier of fact, no issue was joined for the factfinder. *Torres,* 805 S.W.2d 418; *McElwee,* 589 S.W.2d 455; *Steen,* 92 Tex.Crim. 99, 242 S.W. 1047. In essence, a defendant was not "put to trial."

The attachment of jeopardy in a negotiated guilty plea taken before the court, although a type of bench trial, does not implicate the same constitutional policy considerations for the double jeopardy prohibition present in bench trials or jury trials in which guilt is contested. A defendant who has a plea agreement and pleads guilty before the court has no particular interest in a chosen tribunal as does a defendant who pleads not guilty and is tried in a bench or jury trial. Any interest in the finality of judgments is not violated in a guilty plea proceeding by finding jeopardy does not attach until the plea agreement is accepted because no issue is presented as binding on the parties until the trial court accepts the plea. See Art. 26.13. Whereas, in a bench trial when a defendant pleads not guilty the State is then bound to prove its case; and in a jury trial when the jury is empaneled and sworn a defendant has an interest in having that jury decide the contested issues that the State is required to prove. The State does not use its power and resources to convict a defendant on a guilty plea to the same extent it must in a contested trial since the defendant admits guilt and responsibility. There is minimal "harassing exposure to the harrowing experience of a criminal trial" because a defendant forgoes a harrowing contested trial for a guilty plea proceeding in which the parties have agreed on the outcome. Thus, a defendant who pleads guilty is not subject to the embarrassment, anxiety, and insecurity of repeated attempts to convict him since he has admitted his guilt. Therefore, the attachment of jeopardy when the plea agreement is accepted best protects jeopardy concerns because the considerations and policies underlying these concerns implement the purpose of the double jeopardy protection at this point. It is at this point that the defendant has a vested interest in the finality of the proceeding. As discussed, the issue is joined such that the defendant has been "put to trial before the trier of fact." Furthermore, in a negotiated plea proceeding, even after a defendant

pleads guilty, the issue is not joined because neither the State nor Appellant are bound by his plea until the trial court accepts the plea agreement. And, if the court does not accept the agreement, a defendant may withdraw his plea.

The federal courts are not uniform, although many circuits hold that jeopardy attaches when the guilty plea is accepted. *Fransaw v. Lynaugh,* 810 F.2d 518 (5th Cir. 1987); *United States v. Cruz,* 709 F.2d 111, 113 (1st Cir.1983) (see cases cited therein). However, the cases indicate this means acceptance of the plea is also a finding of guilt and an acceptance of the plea agreement. See generally *Sanchez,* 609 F.2d 761; *Cruz,* 709 F.2d 111.

Moreover, we find the United States Supreme Court's holding on a similar issue to be instructive. In *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), the defendant was indicted for first-degree murder but plead guilty to the lesser offense of second-degree murder in exchange for his testimony against two other suspects. The defendant subsequently breached the plea agreement by refusing to testify, his conviction on the lesser offense was vacated, and he was tried and convicted of first degree murder. *Id.* The Supreme Court held that trial on the greater offense did not violate double jeopardy. *Id.* The Court pointed out that both parties received substantial benefits from the plea agreement. *Id.* at 9, 107 S.Ct. at 2685. The Court also noted that the terms of the plea agreement waived a double jeopardy claim in the event the agreement was breached. *Id.* at 9–10, 107 S.Ct. at 2685–86. By recognizing such waiver, *Adamson* shows that the attachment of jeopardy can be made conditional upon adherence to the terms of the plea bargain. That a plea agreement can make the attachment of jeopardy conditional is itself an indication that jeopardy attaches when the agreement is accepted. If a prosecution can proceed after a plea agreement is breached, surely there is no impediment to such prosecution where the plea agreement was never accepted.

Given the purposes and policies of the prohibition against double jeopardy, we hold

that, in a negotiated plea proceeding, jeopardy attaches when the trial court accepts the plea bargain.[4] Because we have found that the trial court did not accept the plea bargain, jeopardy did not attach in the first plea proceeding. Thus, double jeopardy provisions did not bar Appellant's subsequent plea of nolo contendere to aggravated robbery. The judgments of the trial court and the Court of Appeals are affirmed.

OVERSTREET, J., dissents.

CLINTON, Judge, concurring.

The ultimate question is whether in the factual premises of this cause the court of appeals erred in concluding that appellant did not suffer double jeopardy. See *Ortiz v. State,* 885 S.W.2d 271 (Tex.App.—Corpus Christi 1994). Like that court, the plurality and the concurring and dissenting judges of this Court conjure up all sorts of notions and theories to explain why appellant was or was not subjected to loss of that constitutional protection. Because in my view those analyses are not just flawed but rife with propositions boding ill for existing caselaw, I write to suggest a more conventional answer to the question before us.

*I.*

To begin, I agree with Judge Meyers, and for essentially the reasons he gives, that when the trial court "accepted" appellant's plea in this cause,[1] he did not indicate an intention to follow the guilty plea agreement between the parties. Meyers, J., concurring (op. at 110–111). Thus I cannot agree with Judge Baird that this case is controlled by *Perkins v. Third Court of Appeals,* 738 S.W.2d 276, 285 (Tex.Cr.App.1987). Baird, J., dissenting (op. at 114). In *Perkins* the trial court had already manifested its intent to follow the plea agreement, then reneged. But I also disagree with the plurality's conclusion that jeopardy does not attach in a plea-bargained guilty plea until the instant the trial court ratifies the plea agreement. Plurality op. at 106. There is good authority to the contrary.

In *Thornton v. State,* 601 S.W.2d 340, at 344 (Tex.Cr.App.1980) (Opinion on motions for rehearing), we observed that "while it is true that an accused is not entitled to have his [guilty] plea accepted, . . . once he tenders it and the State proceeds to prosecute on that basis, clearly jeopardy has attached." Although *Thornton* has been disavowed in other respects,[2] we have never questioned this observation. Thus, it does not matter, for jeopardy purposes, when the trial court "accepted" the plea bargain agreement. Immediately after the trial court first announced it would "accept" appellant's tendered plea in this cause, the State began to present evidence in support of the judgment, pursuant to Article 1.15, V.A.C.C.P. See n. 1,

---

**4.** The dissent's reliance on *State v. Torres,* 805 S.W.2d 418 (Tex.Crim.App.1991) is misplaced. *Torres* involved a plea of *not guilty* and trial to the court. *Id.* at 419. That situation does not embody the same interests found in a plea agreement scenario. While *Perkins* is a case involving the same interests, *Perkins* applies only where the trial judge has accepted the plea agreement. 738 S.W.2d at 283–284. Because the trial judge did not accept the plea agreement, *Perkins* does not apply to the present case.

**1.** At the plea proceeding on July 28, 1989, the trial court admonished appellant and his codefendants collectively as to range of punishment, and ascertained from each that his plea was freely and voluntarily made. Next the trial court instructed the group that they could only appeal with permission of the court. With this, the trial court announced:

"THE COURT: That being the case, the Court will accept your pleas of guilty at this time. Any evidence from the State?"

After the State tendered documentary evidence, including waivers of rights to jury trial, confrontation and the privilege against self-incrimination, the trial court proceeded to inquire whether it was the intention of the group to relinquish these rights. The trial court then ascertained the each codefendant was a Mexican resident, and admonished the group they could be deported as a consequence of their guilty plea. When each codefendant acknowledged he would persist in his plea, the trial court wrapped up the hearing:

"THE COURT: The Court is hereby going to accept it. Now, I'm not going to be making any decisions today. I'm going to be deferring findings and ordering a pre-sentence investigation report and schedule this matter for further hearing for August the 25th at 9:00 o'clock."

**2.** *Ex parte Martin,* 747 S.W.2d 789, 793 (Tex.Cr.App.1988); *Bender v. State,* 758 S.W.2d 278, 281, n. 1 (Tex.Cr.App.1988).

*ante.* From that point on appellant was in jeopardy of conviction, for it was the trial court's prerogative to follow the plea bargain agreement, and, should it find the evidence sufficient to support a judgment under Article 1.15, convict him. Had the trial court followed the plea bargain agreement in this cause, nothing appellant could have done would have prevented entry of a judgment on his plea.[3] The plurality errs to hold that jeopardy does not attach in a bargained-for guilty plea until the trial court decides it will in fact abide by the terms of the plea agreement.[4]

## II.

Of course, in any case in which a criminal prosecution does not proceed to final judgment, the question when jeopardy attaches is just the beginning of the double jeopardy analysis. *Illinois v. Somerville,* 410 U.S. 458, at 467, 93 S.Ct. 1066, at 1072, 35 L.Ed.2d 425, at 433 (1973). Three questions remain: First, did appellant's guilty plea proceeding in fact terminate prior to culmination in a judgment? Second, if so, did he consent, or at least not object to, the premature termination of his guilty plea proceeding? Finally, if he did not consent, can it nevertheless be said that his "valued right to have his trial completed by a particular tribunal" is, given the peculiar procedural posture of this case, "subordinate[ ] to the public's interest in fair trials designed to end in just judgments"? *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949).

**3.** Indeed, according to this Court's opinion in *Perkins v. Third Court of Appeals,* 738 S.W.2d 276, 285 (Tex.Cr.App.1987), once the trial court has determined it will follow a plea bargain agreement, entry of a judgment on a guilty plea (assuming it is supported by the State's evidence proffered in satisfaction of Article 1.15) is purely a ministerial act.

**4.** Apparently the trial judge may delay his decision whether to follow a plea agreement right up until the moment he makes a "finding on the plea." Article 26.13(a)(2), V.A.C.C.P. Because he cannot make a "finding on the plea" until after the plea has been tendered and evidence produced *in satisfaction* of Article 1.15, he may delay his decision whether to follow the plea agreement until well after the point at which we have said jeopardy "clearly ... has attached." *Thornton,* supra.

## A.

The first question is whether appellant's withdrawal of his guilty plea when the trial court announced it would not follow the plea agreement amounted to a termination of the proceeding without final resolution of the charges against him. If it did not, and the subsequent entry of his plea of nolo contendere, with evidence introduced in support thereof, was just a continuation of the original plea proceeding, then obviously there is no *double* jeopardy problem. Cf. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (double jeopardy's "successive prosecution" prohibition does not prevent state from prosecuting greater inclusive offense, even though defendant pled guilty to and was sentenced on lesser included offense, just as long as guilty plea to lesser included offense and continued prosecution for greater inclusive offense occurred within same continuous proceeding). I am inclined to view the withdrawal of a guilty plea as a termination of the proceeding without final disposition of the charges.

When appellant tendered his plea and the State began to put on its evidence, jeopardy attached. Nevertheless, the trial court was not yet required to say whether it would follow the plea agreement, having deferred "findings" on the plea to a later date. Article 26.13(a)(2). Thus, it is difficult to say exactly what jeopardy attached to. Judge Meyers apparently believes jeopardy at-

Prior to amendment of Article 26.13(a)(2) in 1977, an accused who tendered a plea of guilty pursuant to a plea agreement could be convicted on that plea whether or not the trial court decided to follow the plea bargain. He had no right to withdraw his guilty plea simply because the trial court refused to follow the plea agreement. See *Shannon v. State,* 708 S.W.2d 850, at 853–54, n. 2 (Tex.Cr.App.1986) (Clinton, J., dissenting). Such an accused was clearly placed in jeopardy the moment he tendered his plea and the State began to produce its evidence. That since the 1977 amendment an accused can withdraw his plea if the trial court refuses to follow the plea agreement does not alter the fact that, once his plea is tendered, if the trial court *does* follow the agreement, and the State's evidence supports a judgment of conviction on the plea, he will surely be convicted. He is no less in "jeopardy" than before.

tached to the greater inclusive offense of aggravated robbery, since that is what was alleged in the indictment, and Article 26.11, V.A.C.C.P., "plainly contemplates" that an accused plead guilty to the indictment. Meyers, J., concurring (op. at 111). Just as plainly, however, the parties and the trial court were operating on the assumption appellant was pleading guilty only to the lesser included offense of robbery.[5] But whatever jeopardy attached to, it terminated *sans* judgment with the withdrawal of the plea. For without a plea from the defendant, a criminal prosecution cannot proceed to judgment.[6] Cf. *Peltier v. State*, 626 S.W.2d 30 (Tex.Cr.App.1981) (conviction following jury trial reversed because defendant never pled to the indictment, and hence did not join issue before the jury). Appellant could not be convicted without a new plea and further presentation of evidence in support thereof. Thus I proceed to the second question, whether appellant consented to the premature termination of jeopardy.

### B.

An accused cannot claim the protection of double jeopardy when the premature termination of the proceeding against him is brought about at his own request or with his apparent acquiescence. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is true that, having announced it would not follow the plea agreement, the trial court in this cause essentially instructed counsel for appellant to withdraw his guilty plea.[7] But just because the trial court instructed appellant to withdraw his plea does not necessarily mean appellant did not willingly assent. Far from objecting to the instruction, after a recess to consult with his client, counsel for appellant acceded readily enough, announcing to the trial court that "I would like to make a motion to withdraw my pleas as well." This is understandable, since, absent a plea agreement whereby his exposure was limited to punishment for the lesser included offense of robbery, appellant had no particular incentive to plead guilty. There was a time when appellant would not even have been *allowed* to withdraw his guilty plea under these circumstances. See n. 4, *ante*. It does not appear that appellant was effectively coerced into withdrawing it.[8] Thus, the premature termination of jeopardy without a final resolution of the charges against him does not seem to have occurred against his will. The record supports the court of appeals' alternative holding to the effect that appellant "consented to his 'new trial.'" *Ortiz v. State*, supra, at 274. In the premises, he cannot now invoke the Fifth Amendment guarantee against double jeopardy.

### C.

Because the record supports the court of appeals' alternative holding in this cause,

---

5. At the plea proceeding on July 28, 1989, addressing appellant and his codefendants, the trial court had stated:

> "THE COURT: ... Now, it is my understanding from the State that *we're going on the lesser included of robbery.*
>
> \* \* \* \* \* \*
>
> "THE COURT: All right, Mr. Cortez, Mr. Alvarez and Mr. Ortiz, all lawyers have indicated to the Court that you each understand the charges which you are going to be pleaing to, *which is the robbery and not the aggravated robbery*, that you all intend to plea guilty to this."

(Emphasis supplied.) The trial court then proceeded to admonish the group on range of punishment for the offense of robbery, not aggravated robbery.

6. Of course, if the defendant refuses to plead, the trial court must enter a plea of not guilty for him. Article 26.12, V.A.C.C.P.

7. After informing counsel he would not follow the plea agreement and render a judgment of conviction for the lesser included offense of robbery, the trial court said in open court:

> "So I am hereby going to instruct the respective attorneys to withdraw the pleas of guilty in behalf of your clients and set this matter for trial. And if you don't, I will enter it in your behalf."

8. In announcing he would not follow the plea agreement, the trial court stated:

> "In reviewing all the facts, the pre-sentence investigation reports that were given to me on each respective defendant, I quite frankly, at this time am going to announce to all of you that I cannot in good conscience accept the recommendations that have been made."

Appellant does not assail propriety of the trial court considering the PSI in its decision whether to follow the plea agreement. I therefore do not factor it into my analysis today.

that appellant effectively consented to a second plea proceeding, I need not address the third question, *viz:* whether appellant's right to have his trial completed by a particular tribunal must be, on the facts presented, subordinated to the public's interest in obtaining a just and fair trial.

On these bases I concur in the judgment of the Court. I do not, however, join the Court's opinion.

MALONEY and MANSFIELD, JJ., join.

MEYERS, Judge, concurring.

Appellant was charged by a single-count indictment with the felony offense of aggravated robbery. He agreed to plead guilty to this indictment in exchange for a recommendation from the prosecutor that he be found guilty of robbery, a lesser-included offense. The matter was set for a hearing before the trial judge. Appellant waived reading of the indictment, and was admonished by the judge substantially as required by law. *See* Code Crim. Proc. art. 26.13(a). In response to questioning, appellant averred that his plea was freely and voluntarily given. *See* Code Crim. Proc. art. 26.13(b). His lawyer expressed the view that he was mentally competent.

Next, the judge inquired of the prosecuting attorney whether there would be "any recommendation to the Court in connection with these matters other than the reduction to the lesser included." *See* Code Crim. Proc. art. 26.13(a)(2). Both the prosecuting attorney and the appellant confirmed that no other recommendations were contemplated by their agreement. The judge then accepted appellant's plea of guilty and received evidence proving his guilt. Afterwards, he stated that he would make no further decision in the case until a "pre-sentence investigation report" had been prepared.

About a month later, when court was reconvened, the judge announced for the first time that he could not "in good conscience enter any findings as to the lesser included offense." Accordingly, appellant opted to withdraw his guilty plea, as the law allows. Code Crim. Proc. Art. 26.13(a)(2). Later, the case was reset and appellant entered a plea of nolo contendere without benefit of any plea agreement. The judge then found him guilty of aggravated robbery and sentenced him to confinement in the penitentiary for fifty years.

Appellant maintains that the proceeding in which he was convicted of aggravated robbery was a successive prosecution of the same offense to which he had earlier pled guilty in exchange for the prosecutor's agreement to recommend that he be convicted only for the lesser included offense of robbery. He claims that, when the trial judge accepted his guilty plea, he was placed in jeopardy and that termination of that proceeding was tantamount to the declaration of a mistrial. Although he admits that the proceeding was actually terminated by his own decision to withdraw his guilty plea, he argues that he was goaded into that decision by the trial judge's refusal to implement the prosecutor's recommendation.

In my opinion, appellant's argument is based upon several mistaken assumptions. First, he evidently believes that acceptance of his guilty plea by the trial judge was tantamount to acceptance of his plea bargain with the prosecutor. But this is surely wrong. Our law provides that "[p]rior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of [some important consequences which may follow from his plea]" and that "[n]o plea of guilty or nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." Code Crim. Proc. art. 26.13(a), (b). Thus, acceptance by the court of a defendant's guilty plea is legally inhibited only if the plea is not an intelligent act of the defendant's competent free will. The trial judge need not also agree to ratify the terms of a private agreement between the parties before accepting a guilty plea. At most, he need only state whether he will ratify or reject the bargain.

In the present context, it is reasonably clear that the judge did not mean to express any view about the prosecutor's recommendation when he accepted appellant's plea, but that he meant only to declare on the record a finding that appellant's plea was made competently and voluntarily, with knowledge of

its potential consequences. Thus, appellant was in no position to enforce specifically his plea agreement with the State, since the law does not require a trial judge to effectuate the recommendation of a prosecutor until he has announced in open court, before any finding on the plea, that he will "follow or reject" such recommendation. *Compare Perkins v. Court of Appeals,* 738 S.W.2d 276 (Tex.Crim.App.1987). Because nothing like that happened here, it cannot fairly be said that the trial judge ever agreed to follow, or was ever bound to follow, the prosecutor's recommendation in the first place.

Nevertheless, appellant also seems to contend that a mere plea of guilty to a lesser included offense, once it is accepted by the trial judge, somehow operates as an implied acquittal or dismissal of the charged offense. But the law plainly contemplates that a defendant's plea be directed to the allegations of the indictment, not to lesser offenses included within those allegations. Code Crim. Proc. art. 26.11. Because the indictment in this cause charged aggravated robbery, appellant's plea of guilty was necessarily directed to that charge, even if he expected to be convicted instead of some lesser offense pursuant to a plea bargain with the State.

If, therefore, it is appellant's position on appeal that his guilty plea was directed only to a lesser included offense of the charged offense and that he did not in fact plead to the offense of aggravated robbery, it must also necessarily be his position that he did not plead to the indictment at all. And if he did not plead to the indictment, he was never put in jeopardy under it, since it is well-settled that jeopardy does not attach until the accused has at least entered a plea to the charging instrument. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *State v. Torres,* 805 S.W.2d 418 (Tex.Crim.App.1991).

If, on the other hand, it is appellant's position that he did enter a plea of guilty to the offense of aggravated robbery, then he must concede that the trial judge was authorized to proceed immediately with an adjudication of his guilt for that offense, since a plea bargain cannot bind the judge. The only way he could reasonably expect to avoid

that consequence would be to withdraw his guilty plea as authorized by law on account of the trial judge's refusal to follow the prosecutor's recommendation. And that is exactly what he did. To claim, as he now does, that the trial judge somehow bullied him into withdrawing his plea, suggests that he was really prepared to be convicted of aggravated robbery without further ado but that the judge, in order to embarrass him with repeated guilty plea hearings, refused to let him proceed. This suggestion is, of course, preposterous. Not only is it implausible on its face, but there is absolutely nothing whatsoever in the record to support it.

The truth is that the proceedings which appellant now claims were successive prosecutions for the same offense were really quite typical of negotiated guilty pleas, except for one odd circumstance. The judge and the parties all preferred to speak of the first proceeding as if it were a plea to the lesser included offense of robbery rather than a bench trial for the charged offense of aggravated robbery. This was a mistake. But it does not alter the fact that, if appellant was placed in jeopardy at all in the first proceeding, it was on his plea of guilty to the offense of aggravated robbery. Because the record does not reflect, nor does appellant claim, that the aggravated robbery indictment was ever actually dismissed, or that the State ever actually agreed to dismiss it, in exchange for his guilty plea, I am satisfied that appellant did in fact plead guilty to, and was therefore put in jeopardy of conviction for, the offense of aggravated robbery.

I am not, however, prepared to accept that his later decision to withdraw that guilty plea terminated his jeopardy for aggravated robbery in such a way as to bar further judicial proceedings in the case. Were we to hold that it did, the result would be that all negotiated guilty pleas under the Code of Criminal Procedure would have adverse jeopardy consequences for the prosecution whenever the trial judge refused to implement the State's agreed recommendation and the defendant opted to withdraw his plea. But no such result is required under the Constitution of Texas or of the United States because the first plea proceeding did not end with an

acquittal of appellant for aggravated robbery or with his conviction for robbery, and because such proceeding was actually interrupted at appellant's request. Moreover, it cannot fairly be said that the judge or prosecutor improperly exerted any pressure on appellant to withdraw his plea. *Cf. Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). There is nothing in the record to support a conclusion that the trial judge would not have been willing to proceed with an adjudication of appellant's guilt for the offense of aggravated robbery at any time after his receipt of the presentence report had appellant indicated a desire to proceed with such an adjudication at that time. Consequently, appellant was not successively prosecuted for the same offense in violation of state or federal double jeopardy prohibitions.

For these reasons, I concur in the judgment of the Court.

BAIRD, Judge, dissenting.

At what point in a bench trial does jeopardy attach? This question was answered in *State v. Torres*, 805 S.W.2d 418 (Tex.Cr.App. 1991). Nevertheless, this Court once again shows its willingness to ignore established precedent, and finds an exception for trial judges who ignore the Texas Code of Criminal Procedure. Accordingly, I am compelled to lodge this dissent.

## I.

Marco Antonio Quintero, Francisco Garcia Cortez, Guillermo Longoria Alvarez and appellant were Mexican residents who entered this country to commit a robbery. The men located a grocery store and appellant waited in the vehicle while his co-defendants entered the store and, at gunpoint, escorted the manager to the store's safe. However, the police arrived and shots were exchanged between Quintero and a Brownsville policeman. Both were shot. The co-defendants were arrested and gave video-taped statements and admit-

ted participating in the robbery. Appellant fled to Mexico but was arrested two days later as he attempted to visit Quintero in the hospital. Appellant gave a video-taped statement and admitted participating in the robbery. Quintero was charged with attempted capital murder and aggravated robbery. Tex. Penal Code Ann. §§ 19.03(a)(1) and 29.03. Appellant and the remaining co-defendants were charged with aggravated robbery.

Prior to trial, appellant and his co-defendants reached a plea bargain agreement with the State whereby appellant, Cortez and Alvarez would plead guilty and the State would reduce the offense from the first degree felony of aggravated robbery to the lesser, second degree offense, of robbery, with no agreed recommendation as to punishment. Quintero agreed to plead guilty to aggravated robbery, and the State agreed to dismiss the attempted capital murder charges. There was no agreed recommendation as to Quintero's punishment.

The State, appellant and the co-defendants appeared before the trial judge and pled guilty pursuant to their respective agreements. *See,* Appendix "A," *infra.*[1] The trial judge admonished the defendants and accepted their pleas.[2] The trial judge then ordered a pre-sentence investigation report and scheduled the cases for sentencing. Appellant and his co-defendants appeared on the scheduled day for sentencing. *See,* Appendix "B," *infra.*[3] The record establishes that during the interim: 1) the trial judge and prosecutor received a great deal of unfavorable publicity concerning the plea agreements; 2) police officers began a petition drive to influence the trial judge; 3) numerous petitions were delivered to the trial judge; and, 4) a citizen's group contacted the trial judge to discuss these cases. *See,* Appendix "B," *infra.* Further, many police officers and other members of the community were present at the sentencing hearing.

---

**1.** Attached hereto as Appendix "A" are relevant excerpts from appellant's plea of guilty.

**2.** The plurality holds the trial judge's acceptance of the guilty plea was tentative. The record does not support this holding. On two separate occa-

sions the trial judge informed appellant and his co-defendants that he would accept their pleas of guilty. *See,* Appendix "A," *infra.*

**3.** Attached hereto as Appendix "B" are relevant excerpts from the sentencing hearing.

Quintero asked to withdraw his plea, contending the actions of the police officers coupled with the extensive and adverse pretrial publicity could only influence the trial judge to impose an unjust punishment. *See,* Appendix "B," *infra.* Quintero contended he was entitled to withdraw his plea because he "wouldn't be able to destroy the monster that [the police and media] have created." *Ibid.* In essence Quintero contended that, because of the extensive publicity and pervasive community opinion surrounding this case, the trial judge would be unable to be fair and impartial in the imposition of sentence.

The prosecutor conceded the intense publicity and community feeling surrounding this case but contended the pleas were voluntary and opposed Quintero's request to withdraw his plea.[4] Appellant and his co-defendants did not ask to withdraw their pleas. Instead, appellant announced he was ready to proceed with sentencing and the State agreed. *See,* Appendix "B," *infra.*

The trial judge granted Quintero's motion to withdraw his plea. Thereafter, the trial judge, *sua sponte,* instructed appellant and his remaining co-defendants to withdraw their pleas because the trial judge felt "that for the Court to accept the recommendations that have been made in this case would be sending the wrong message to the community from the courts." The trial judge ordered:

> So I am hereby going to instruct the respective attorneys to withdraw the pleas of guilty in behalf of their clients and set this matter for trial. *And if you don't, I will enter it in your behalf.*[5]

Appellant then moved to withdraw his plea and the trial judge ordered the plea withdrawn. Appellant's motion to change venue was granted and the case was transferred from Cameron County to Willacy County. Appellant later entered a plea of *nolo contendere* to the first degree offense of aggravated robbery, and the trial judge assessed punishment at fifty years.

On appeal appellant contended his aggravated robbery conviction was barred because jeopardy attached when the trial judge accepted appellant's plea to robbery. The Court of Appeals disagreed, holding that "[w]hen presented with a plea bargain, the court has the right to accept or reject it ... Any acceptance of the plea of guilty before approval of the agreement is both premature and tentative" *Ortiz v. State,* 885 S.W.2d 271, 273 (Tex.App.—Corpus Christi 1994). Therefore, the Court of Appeals reasoned, since the trial judge did not accept the plea bargain, jeopardy did not attach to appellant's case. *Id.,* 885 S.W.2d at 274. The Court of Appeals held appellant consented to a new trial because he withdrew his plea of guilty. *Ibid.*

## II.

In *State v. Torres,* 805 S.W.2d 418, we were asked to determine when jeopardy attaches in a bench trial under the Texas Constitution. The State and Torres announced ready for trial. Torres waived the formal reading of the indictment and pled not guilty. Thereafter, the State sought to amend the indictment but the trial judge refused the amendment. When the State refused to present any witnesses, the indictment against Torres was dismissed for want of prosecution. *Id.,* 805 S.W.2d at 419. The State obtained a new indictment which the trial judge dismissed, holding the prosecution was jeopardy barred. In affirming we held: "for bench trials, jeopardy attaches when both sides have announced ready and the defendant has pled to the charging instrument." *Id.,* 805 S.W.2d at 421.

In *Perkins v. Court of Appeals,* 738 S.W.2d 276 (Tex.Cr.App.1987), the defendant was charged with murder. The State and defendant entered into a plea agreement whereby the defendant pled guilty and was to receive

---

**4.** Even though the plurality takes issue with this statement, *ante* at 103, n. 1, it is supported by the record. The prosecutor stated:

> ... if there were no police officers in this courtroom, if his Honor were placed with no petitions or ten thousand petitions, we would

be asking for the same thing. ... I don't, I am just trying to ask the Judge to try to ignore some of the petitions. ....

*See,* Appendix "B."

**5.** All emphasis is supplied unless otherwise indicated.

not more than twenty-five years confinement. The trial judge admonished the defendant, accepted his plea and ordered a pre-sentence investigation report. *Id.,* 738 S.W.2d at 279. At the sentencing hearing the trial judge stated he would not accept the plea bargain. *Id.,* 738 S.W.2d at 280. The defendant sought a writ of mandamus, contending he was entitled to be sentenced under the plea bargain.

We held the trial judge had "no lawful authority to *sua sponte* withdraw" the defendant's guilty plea, because his actions "actually amounted to the granting on his own motion a new trial." *Id.,* 738 S.W.2d at 280–281. In so holding, we acknowledged the trial judge's actions would render a second conviction void, *id.,* 738 S.W.2d at 281, because the specific performance of the plea bargain agreement was "ministerial, mandatory and nondiscretionary." *Id.,* 738 S.W.2d at 285.

### III.

The plurality recognizes that a plea of guilty entered pursuant to a plea bargain agreement constitutes a bench trial. *Ante,* 933 S.W.2d at 105. Therefore, this case should be resolved by a straightforward application of *Torres* and *Perkins.*

In the instant case, the State and appellant announced ready and, pursuant to a plea bargain agreement, appellant pled guilty to the lesser offense of robbery. The trial judge accepted this plea. *See,* Appendix "A," *infra.* Under *Torres,* jeopardy attached when the trial judge accepted appellant's plea to the offense of robbery. *Torres,* 805 S.W.2d at 421. And under *Perkins,* appellant is entitled to the specific enforcement of his plea bargain. *Perkins,* 738 S.W.2d at 285. But, citing *no* authority, the plurality chooses to ignore *Torres* in cases involving plea agreements. Instead the plurality holds "the attachment of jeopardy when the plea agreement is accepted best protects jeopardy concerns...." *Ante,* 933 S.W.2d at 105. Finding the trial judge accepted appellant's guilty plea, but not his plea bargain, the plurality holds jeopardy did not attach. The plurality's approach is flawed for at least two reasons.

First, the Code of Criminal Procedure requires the trial judge to accept a plea bargain agreement *before* accepting the guilty plea. Tex.Code Crim. Proc. Ann. art. 26.13(a)(2). Under art. 26.13(a)(2) the trial judge is required to "inquire as to the existence of any plea bargain agreements between the state and the defendant and, in the event that such agreements exist, the court shall inform the defendant whether it will follow or reject such agreements in *open court and before any finding on the plea.*" In this case the trial judge did not expressly state he would follow or reject the plea bargain agreement but under art. 26.13(a)(2), the trial judge could not have accepted appellant's plea to the lesser offense of robbery unless he had accepted the plea agreement. In short, a common sense reading of the record supports a finding that the trial judge necessarily accepted the plea bargain agreement when he accepted appellant's plea of guilty.

Second, appellant's plea bargain was complete at the time he entered his plea because there was no agreed recommendation as to punishment. Punishment was a matter left to the discretion of the trial judge and both parties were free to present arguments to the trial judge on that issue. Thus, the plea bargain agreement was complete at the time the trial judge accepted appellant's plea. Thus, as in *Perkins,* appellant's plea bargain agreement was complete before the proceedings were rescheduled for sentencing. Appellant relied upon the terms of this agreement until the trial judge *sua sponte* ordered appellant to withdraw his guilty plea.

For these reasons, I would hold jeopardy attached when the trial judge accepted appellant's plea to the offense of robbery. *Torres, supra.* Because the terms of the plea bargain agreement can be enforced, I would remand this case to the trial court with orders to sentence appellant for the offense of robbery. *Perkins, supra.*

### APPENDIX "A"

#### Plea of Guilty

#### July 28, 1989

THE COURT: Okay, Let's get on the record on Cause No. 89–CR530–E, in the mat-

ter of State of Texas versus Francisco Garcia Cortez, Guillermo Longoria Alvarez and *Osiel Valdez Ortiz.*

\* \* \* \* \* \*

THE COURT: All three of you said that your clients understand the accusations. *Now, it is my understanding from the State that we're going on the lesser included of robbery.* ... Have you all explained to your respective clients the accusation that they are going to be entering a plea to ... ?

[Each lawyer announced
in the affirmative.]

\* \* \* \* \* \*

THE COURT: And how does your client intend to plea ... ?

[Each defendant pled guilty.]

\* \* \* \* \* \*

THE COURT: All right. Mr. Cortez, Mr. Alvarez and Mr. Ortiz, all lawyers have indicated to the Court that you each understand the charges which you are going to be pleading to, *which is the robbery and not the aggravated robbery.* That you all intend to plea guilty to this. Is that true and correct ... ?

[Each defendant indicates it is.]

THE COURT: Okay. For all three of you, in the event that the Court were to find you guilty, you could receive by way of punishment from the Court for this accusation no less than two years, no more than 20 years in the Texas Department of Corrections. In addition, you could receive a fine not to exceed five thousand. Do you under stand that ... ?

[Each defendant answered
in the affirmative.]

THE COURT: If your intention is to plead guilty, are you pleading guilty freely and voluntarily, or has somebody promised anything, threatened you or forced you to plea this way ... ?

[Each defendant pleas voluntarily.]

\* \* \* \* \* \*

THE COURT: Is there going to be any recommendation to the Court in connection with these matters *other than the reduction to the lesser included?*

THE STATE: Not a this time, Your Honor, no.

THE COURT: It's been brought to my attention, Mr. Cortez, Mr. Alvarez and Mr. Ortiz that there is going to be no recommendation to the Court by way of the sentence, which means that whatever I decide to sentence you to, you will have to accept that. And further that, you know, not only will you have to accept it, but you further waive the right to appeal the judgment of the Court, unless you first obtain written permission to do so from this Court.

Do you understand that that is the law ... ?

[Each defendant answered
in the affirmative.]

THE COURT: That being the case, *the Court will accept your pleas of guilty at this time.* ...

\* \* \* \* \* \*

THE COURT: Now, certain documents are being offered for my consideration and review which appear to have your signatures which indicate to the Court that you all wish to waive your rights to a jury trial, you further wish to waive your rights to confront your accusers in open court and you stipulate that the evidence that's been offered is true and correct.

In addition, you give up your right against self-incrimination. Are those your intentions and agreements ... ?

[Each defendant answered
in the affirmative.]

THE COURT: Do all three of you further understand as an admonishment that if you were to be convicted for this accusation that you could be deported from this country? In addition, you could be denied entry into this country. Further, you could be denied citizenship rights in this country. Do you understand this is also a consequence of this case ... ?

[Each defendant answered
in the affirmative.]

\*   \*   \*   \*   \*   \*

THE COURT: *The Court is hereby going to accept it.* Now, I'm not going to be making any decisions today. I'm going to be deferring findings and ordering a pre-sentence investigation report and schedule this matter for further hearing. . . .

## APPENDIX "B"

### Sentencing Hearing

### September 1, 1989

QUINTERO'S COUNSEL: If it please the Court, your Honor, and if I may address the Court, at this point we are respectfully with all due deference, requesting that the plea be withdrawn.

The reason we are asking for this, for various reasons, your Honor. Let me say at the onset that I have been before this Court many times with many defendants. And I have the utmost respect for the integrity and the dignity of this Court. And me, and as many other defense attorneys have been in this' court on several plea bargains.

But in this case it's very difficult, your Honor. It's very difficult for various reasons. I know that your Honor is honest and I know that your Honor tries to do what is fair. But again, under these circumstances we are forced to bring forth this motion, motion for leave to withdraw his plea of guilty. And the reasons for this is that it is very difficult for this Court or any other court, in view of the circumstances, *to not be influenced by the misactions of a few renegade police officers who go to the society, who go out there to the community and threaten them into signing petitions or they will not protect them or they'll not serve them.*

It's very difficult for this Court or any other Court of these few renegade police officers to run to the city commissioners and *pressure them into creating a resolution,* a resolution that in the end is affecting Mr. Quintero and his appearance in this court. It is very difficult for this Court or any other Court, your Honor, not to be influenced by the fact that in our country the most immature person can come and express their opinion.

In fact, there was a *letter highly critical of myself,* an attorney who merely is trying to do his job, who is merely trying to abide by the expectations and requirements of the law giving the best representation that I can to Mr. Quintero.

It's very difficult for this Court or any other Court not to be influenced when the newspapers, which are cheap and plenty, who care nothing about the administration of justice but only care about selling newspapers, same thing with the news media, who are only interested in competing with the sister stations in order to get bigger items. They are not interested in the administration of justice, your Honor.

It is again with reluctance that I again emphasize and plea with the Court to allow Mr. Quintero to withdraw his motion. He is to withdraw his plea of guilty, your Honor.

It is very difficult for this Court and for any other Court for that matter, to see a few police officers and a few irresponsible, insensitive and almost inhuman people feel that they are beyond and above the law, that they can go out there and *create all kinds of negative publicities* when in essence here we are in a court of justice, here we are in the administration of justice, where everybody, no matter what they are, the Russians or whatever, and for that matter, Mr. Quintero is a citizens of these United States and even if he wasn't, he is supposed to be in accordance with the Constitutional guarantees that are given to any and all defendants.

He is supposed to be given those same rights, your Honor. Again, some people are out there saying he was a mojado, a wetback, a person from, not from here.

That shouldn't matter. But he is a citizen of these United States.

In addition, your Honor, it is very difficult for this Court or any other Court *to be inundated with petitions* who came from the pressures of those renegade officers and those irresponsible people who are asking or they are not asking for justice, they are asking for revenge. They are asking for *political revenge. They are asking give [the District Attorney] a lesson.*

This is not the purpose of this case, your Honor. This is not the purpose of our administration of justice.

Again, for all these reasons and others that I can't name at this time, your Honor, and in addition, let me say, your Honor, I am probably the least person knowledgeable in the area of crime and punishment, but I have read a lot of literature in the past two or three hundred years in connection with these themes and the more I read and the more I study and the more that I doubt, my doubt grows as to the severity of punishment having anything to do with stopping of the crime.

People here—

THE COURT: Excuse me, [Quintero's attorney]. You are making certain assertions, all right? Obviously, I have not even commented on some facts, but go ahead and proceed.

QUINTERO: That's what I say, that I have the utmost respect for you and this court. I consider you a friend of mine, your Honor. And I consider you a fair person. And even if you weren't a friend of mine, I know that you are an honest person. You have always given out justice the way it's supposed to be.

And this is not the first plea that has come before this Court. In fact, I have two more pleas before this Court this morning. And it's not the first time that the District Attorney's office and defense attorneys like myself get together with the police officers, your Honor.

But in these circumstances, *the uniqueness of these circumstances, all the negative publicity, all the pressures that have been created by virtue of all those petitions, et cetera,* your Honor, it is very difficult, again, for this Court, or any other Court, your Honor, to meet out justice, to meet out justice without really having an opportunity to know who's Mr. Quintero.

He has come here because of all the *negative publicity.* He won't be able to destroy the monster that they have created.

This is not the crime of the century, Judge. This is not a capital murder case. This is just a robbery that went sour. And some people out there are saying, your Honor, meet out the justice, the same justice that Mr. Quintero gave Mr. Castro and the same justice that Mr. Quintero gave Ponce.

This is not in accordance with our expectation of the law and the administration of justice, Judge. To do this would be to turn back the clock, to go against humanity, to go against civilization, in essence, to go back to the jungle. And this is not a jungle. This is not a Columbian-style justice. This is not Komani-style justice. This is American justice, your Honor.

So for all these reasons, I again implore your Honor, I pray that you allow Mr. Quintero to withdraw his plea of guilty, your Honor. And again, I'm very sorry for taking up so much time, for talking so much, Judge, but this is extremely, extremely the type of case that merits my talking in this connection and with this frame of mind, your Honor.

And lastly, let me say that I new that when we made the agreement, Judge, that the District Attorney's Office, through Mr. Cyganiewicz was going to be asking for the maximum. I knew that, my client knew that. But at the same time, we felt that we could come in here and present evidence with respect to Mr. Quintero that could probably equalize, because we were coming in to ask for the minimum, Judge. And

there's been other cases not similar to, but more probable than this that have gotten different types of justice.

Again, your Honor, we implore that you allow Mr. Quintero to withdraw his plea of guilty and allow us to go to the jury for sentencing.

THE COURT: ... I am not going to make any comment. I am simply going to allow equal time to all the respective parties. Obviously, your client Mr. Quintero is present. He has pled guilty before this Court on the matter of aggravated robbery.

Obviously, I allowed him to enter the plea of guilty. However, I did not make any findings at the time of the plea. I withheld any finding ordering a pre-sentence investigation report. One has been provided.

Have you been provided with all the necessary reports in connection with your client?

\*     \*     \*     \*     \*     \*

As far as [appellant].

APPELLANT'S COUNSEL: Yes, sir.

THE COURT: Same things with him. I also allowed him to plead guilty and I did not make any findings, likewise ordering a pres-sentence investigation report.

APPELLANT'S COUNSEL: I have had an opportunity to review the report, Judge. And *my client is ready to go forward.*

THE COURT: All right. I'm going to set these guidelines: I'm going to allow from the respective defense attorneys to make their presentations to the Court before I make my findings. I will allow the District Attorney's Office an opportunity to make their presentations.

It had been brought to my attention that *a group of people from the community wanted to talk to me* on Thursday. I instructed my bailiff to inform the group that, the victim group, that under our rules the Court is not allowed to have ex parte hearings on any matters. However, I did inform my bailiff to inform the group that I would allow you to speak under the Victim's Law Act. You are allowed to your presentations to the Court. I will ask that you *select one of the group as your spokesperson and I will allow that group to make a presentation* in connection with this case.

So with that in mind, who wants to go first? ...

\*     \*     \*     \*     \*     \*

ASST. DISTRICT ATTORNEY: Your Honor, before [The District Attorney] addresses the Court, I would like to briefly make a few comments and most important in reply to [Quintero's] concerns. I have Judge, I also have a great respect for you, consider you to be a very fair judge. I have a lot of respect for [Quintero's attorney] and his position. *And he has a right to be concerned to a certain degree, your Honor.*

\*     \*     \*     \*     \*     \*

... I'm just going to ask the Court, your Honor, *if there were no police officers* in this courtroom, *if his Honor were placed with no petitions or ten thousand petitions,* we would be asking for the same thing. If I were here along with [Quintero] and his Honor and no one else was here, your Honor, I would ask for [the maximum sentence].

I don't, I am just trying to ask the Judge to try to ignore some of the petitions or I know that you can consider them, Judge. But our position is that we were going to asking for [the maximum sentence] in this matter no matter what was presented today. That was our strategy and our plan from day one.

*We'd ask the Court to accept the plea.* I was present for the plea. It was voluntary, as his Honor knows. And we just wanted the maximum from the start, your Honor, no matter who was here today. And that's what we are requesting.

\*     \*     \*     \*     \*     \*

With regards to the other defendants who are not involved in a shooting of an officer, but who are involved in a very horrible, cruel crime, we ask for the

maximum on those defendants also, your Honor.

\* \* \* \* \* \*

THE COURT: [Appellant's counsel], anything in behalf of your client?

APPELLANT'S COUNSEL: Yes, sir. After reading the PSI, it is accurate. The only thing I would like to emphasize at this point, Judge, is that this gentleman is 38 years old. The first time he's been involved in this type of crime, any trouble whatsoever, Judge. We puts full faith in your objectivity in this situation, Judge. Nothing further.

\* \* \* \* \* \*

[The trial judge then asked Quintero if he wanted to withdraw his plea on the advice of counsel and whether he was aware of the consequences of doing so.]

\* \* \* \* \* \*

[The trial judge then allowed the District Attorney to argue for imposition of the maximum sentences for each defendant.]

\* \* \* \* \* \*

THE COURT: All right. Now, do we have anybody from the victim's group that wishes to address the Court? Do we have anybody from the victim's group that wish to address the Court at this time? This is your chance now. Anyone? All right.

First of all, I want to tell all the respective parties involved that, obviously, *this is a very serious accusation,* as stated by you so eloquently [Quintero's counsel].

And I can, how should I say, I can sympathize with you, because obviously, when you become a lawyer you take the oath to practice law. You swear to do the best of whatever you can of your abilities to represent your clients to the best of your abilities. And I can sympathize in the position that you are in the position that you find with your client at this time.

I also can sympathize with the other attorneys that are representing these. *This case is obviously not an easy case for any Court to decide,* based on the facts that have been presented.

In reviewing all the facts, the presentence investigation reports that were given to me on each respective defendant, I quite frankly, *at this time am going to announce to all of you that I cannot in good conscience accept the recommendations that have been made.*

I also feel that as was stated by [the District Attorney] that for the Court to accept the recommendations that have been made in this case *would be sending the wrong message to the community from the courts.*

I therefore, am going to ask, I'm going to approve [Quintero's counsel], first of all, the withdrawal of the plea of guilty. . . . And I'm going to set both cases for trial. Now, *as to the other three, the Court cannot in good conscience enter any findings to the lesser included offense.*

You know, I have five children and if all five of my children commit a wrong, I expect to sentence them all alike for the same wrong that they all committed. And I wouldn't have been allowed to be able to do this in these cases.

*So I am hereby going to instruct the respective attorneys to withdraw the pleas of guilty in behalf of their clients and set this matter for trial. And if you don't, I will enter it in your behalf.*

\* \* \* \* \* \*

I may also address myself to the group of people that sent all those petitions to the Court. I don't know who you are. I recognize some signatures, but I do want for you to understand that *your efforts have been courageous, well-intended.* I think that all of us that are in this courtroom, along with the District Attorney's Office, the defense attorneys, always keep in mind what is in the best interest of the community, the well-being of the community and the safety.

I know that our courts here have always taken in account your best interest, your family's best interest and your children's best interest, specifically, any and all cases involving violent behavior.

I do want to thank you for your civic duty to making your intentions to this Court as far as how you felt about it. *Obviously, we always keep those in mind.*

Thank you for doing a tremendous and courageous civic duty as well as your responsibility as citizens of this State.

I'm going to at this time continue with the rest of my docket. And it was nice having you here.