NUMBER 13-03-388-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAUL ADAM MARTINEZ, JR., Appellant,


v.



THE STATE OF TEXAS , Appellee.

 


On appeal from the 248th District Court of Harris County, Texas.


 


DISSENTING OPINION



Before Chief Justice Valdez and Justices Yañez and Castillo


Dissenting Opinion by Justice Yañez


 

 I agree with the majority that the United States Supreme Court's decision in Missouri
v. Seibert is applicable to this case. (1) I disagree, however, with the majority's application
of Seibert and its conclusion that the trial court did not err in admitting appellant's
videotaped statement. I would hold that appellant's statement was obtained pursuant to
a deliberate two-step interrogation technique used to undermine the effectiveness of
Miranda warnings, (2) and that the statement is therefore inadmissible. Because I cannot
conclude beyond a reasonable doubt that the statement did not contribute to appellant's
conviction, I would also hold that the error was harmful. (3) I would sustain appellant's issue,
reverse his conviction, and remand to the trial court for a new trial. Accordingly, I
respectfully dissent.

 In a single issue, appellant contends the trial court erred in admitting his post-Miranda videotaped statement because his "initial interrogation," prior to receiving Miranda
warnings, tainted his warned statement and rendered it involuntary. Appellant contends
he was subjected to an "unwarned interrogation process, including . . . polygraphing,"
which was used to obtain admissions from him before he was apprised of his rights. 
Appellant argues that the warned and unwarned portions of his interviews were "part of one
continuous process," and that his warned statement was therefore involuntary and
inadmissible. 

 In response, the State argues that (1) appellant was not interrogated and gave no 
incriminating statement prior to waiving his constitutional rights, and (2) the admission of
appellant's statement was harmless in light of other evidence of his guilt. I conclude that
by subjecting appellant to a polygraph examination that included questions about the crime
for which he was arrested, without first giving him Miranda warnings, law enforcement
officers deliberately utilized a two-step interrogation technique that undermined appellant's
subsequent Miranda warnings and rendered his videotaped statement inadmissible. 

Standard of Review and Applicable Law


 A trial court's ruling on a motion to suppress is generally reviewed for abuse of
discretion. (4) In a suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given to their testimony. (5) In reviewing a
trial court's ruling on a motion to suppress, we afford almost total deference to the trial
court's determination of the historical facts that the record supports, especially when the
trial court's findings turn on evaluating a witness's credibility and demeanor. (6) When, as in
this case, the trial court makes no explicit findings of historical fact, we presume it made
those findings necessary to support its ruling, provided they are supported in the record. (7)
We afford almost total deference to the trial court's ruling on "application of law to fact
questions," also known as "mixed questions of law and fact," if resolving those ultimate
questions turns on evaluating credibility and demeanor. (8) We review de novo questions of
law and "mixed questions of law and fact" that do not turn on an evaluation of credibility
and demeanor. (9) We uphold a trial court's ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the case. (10)

 The safeguards established in Miranda come into play when a person in custody is
subjected to either express questioning or its functional equivalent. (11) A confession may be
deemed "involuntary" under three different theories: (1) failure to comply with article
38.22; (12) (2) failure to comply with the dictates of Miranda; or (3) failure to comply with due
process or due course of law because the confession was not freely given as a result of
coercion, improper influences, or incompetency. (13) When a defendant challenges the
voluntariness of a confession, the burden is on the government to show that a waiver of
Miranda rights was the result of a defendant's own free and rational choice in the totality
of the circumstances. (14) 

 The Texas Court of Criminal Appeals has held that a trial court's erroneous
admission of a defendant's statement in violation of the Fifth Amendment is federal
constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure
44.2(a). (15) Under rule 44.2(a), a judgment of conviction or punishment must be reversed
unless the reviewing court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment. (16) Error in admitting an appellant's statement
is not harmless beyond a reasonable doubt if there is a reasonable likelihood that the error
materially affected the jury's deliberations. (17) Thus, a reviewing court should "calculate, as
nearly as possible, the probable impact of the error on the jury in light of the other
evidence." (18) 

Analysis 


 Appellant argues that his post-Miranda statement is inadmissible because his
unwarned and warned statements were "one continuous process." Appellant cites Jones
v. State, 119 S.W.3d 766, 775 (Tex. Crim. App. 2003) and Missouri v. Seibert, 542 U.S. 
600, 616-17 (2004), in support of his argument. (19) 

 The majority applies the multi-factor test crafted by the four-justice plurality in
Seibert and concludes that under the circumstances, appellant's pre-statement Miranda
warnings effectively apprised him of his rights and rendered his statement admissible. (20) 
As noted, I agree that Seibert is applicable, but disagree with the majority's application of
Seibert and its conclusion. Under the holding in Seibert, the threshold issue is whether the
officers deliberately engaged in a two-step procedure to weaken Miranda's protections. (21) 
By subjecting appellant to a polygraph examination that included questions about the crime
for which he was arrested, without the benefit of Miranda warnings, the officers deliberately
used a two-step interrogation technique to undermine the protections of Miranda. 

 In Jones, a Texas Ranger questioned the appellant, while in custody for one
offense, about two extraneous murders. (22) After the appellant orally admitted his
involvement in the murders, the officer wrote down "verbatim" what the appellant said,
during an interview that lasted approximately an hour-and-a-half, postponing Miranda
warnings until he asked the appellant to sign the written statement. (23) The court of criminal
appeals held that the circumstances reflected "a serious misunderstanding by law
enforcement" of the requirements of Miranda. (24) The court found that the unwarned oral
statement and the written warned statement "were given during a nearly undifferentiated
single event, taking place in the same room as an uninterrupted and continuous process." (25) 
The court held that to declare the statement admissible by virtue of the late warnings
"would undermine the spirit and intent of Miranda." (26) 

 In Seibert, the United States Supreme Court addressed a "question-first"
interrogation strategy, by which officers intentionally questioned a person under arrest
without giving Miranda warnings until the suspect confessed, then gave the warnings and
repeated the questioning to get the same incriminating response. (27) Justice Kennedy,
concurring with a plurality of four other justices, held that a post-Miranda statement given
after pre-Miranda statements, should be judged under the standard laid out in Oregon v.
Elstad, 470 U.S. 298, 314 (1985), (28) unless the withholding of Miranda warnings was a
deliberate strategy on the part of law enforcement officials to circumvent the protections
of Miranda. (29) Justice Kennedy narrowed the Seibert test to two parts. (30) First, a court must
decide whether the officers made a "deliberate" choice to flout Miranda in the first round
of interrogation. (31) If so, "postwarning statements that are related to the substance of
prewarning statements must be excluded unless curative measures are taken before the
postwarning statement is made." (32) Such "curative measures" include, for example, a
sufficient break in time or circumstances between interrogations, or a warning to the
suspect that the first statement cannot be used against him. (33)

 Appellant argues that "[a]s in Jones and Seibert, the unwarned and warned portions
of the interviews with [him] here were done as part of one continuous process." 

 The only witness at the hearing on appellant's motion to suppress was Macario
Sosa, the Houston police officer who arrested appellant. Officer Sosa testified that
pursuant to a Crime Stoppers tip, appellant was identified as a suspect in the robbery that
resulted in the murder of Manuel Arriaga-Molina, one of the victims. Two of the surviving
victims, Gustavo Lopez Camilo and Alfredo Loredo Balderas, identified appellant as a
participant in the crime from a photo array. Officer Sosa obtained an arrest warrant and
arrested appellant about 10:30 a.m. The officer told appellant why he was being arrested,
and appellant denied knowing anything about the situation. Officer Sosa transported
appellant to police headquarters and asked him if he was willing to take a polygraph
examination. Officer Sosa did not provide Miranda warnings to appellant. Officer Sosa
provided the case file to the polygraph examiner, who then prepared the questions. 
Appellant was taken to a "polygraph room" in the same building (police headquarters) for
a polygraph examination. Officer Sosa testified that the polygraph procedure, including
preparation of the questions and the examination itself, took three to four hours. After the
examination, Officer Sosa was advised that the polygraph results showed "deception" on
appellant's answers to some questions. Officer Sosa confronted appellant with the
polygraph results. Appellant was then taken before a magistrate at municipal court (at a
separate location) around 5:00 p.m., and was advised of his Miranda rights. Immediately
thereafter, appellant was taken to a "central hold area," at a separate location, where he
gave his videotaped statement.

 On cross-examination, defendant's counsel asked Officer Sosa if he recalled the
questions appellant was asked during the polygraph examination that "supposedly
reflected deception." Officer Sosa responded that he did not. Defense counsel questioned
Officer Sosa about appellant's reaction when he was told that he "failed" the polygraph
examination. Officer Sosa stated that he did not recall. 

 At the suppression hearing, Officer Sosa testified as follows:Q [by defense counsel]: Now, on the tape we heard some references to
yeah, that's what they told me, or, yeah, that's what that guy said, with
reference to like the number of shots. Who would "they" have been when
he's pointing to the wall there?


A [Officer Sosa]: The polygraph examiner. 


Q: So the polygraph examiner gives the person information as they're asking
questions about the offense; is that correct?


A: I wasn't present so I can't tell you exactly what happened during the
examination.


Q: So you can't say for sure that the polygrapher did not provide him with
details of the offense in order to ask him questions?


A: I can't say whether he provided details and Miranda warnings, what have
you, no, ma'am.


Q: Because you have nothing to do with that?


A: I was not present during that time. 


 We have reviewed appellant's videotaped statement. The tape shows appellant
responding to questions posed by Officers Sosa and Hernandez. During the interrogation,
there are two instances in which appellant refers to information about the circumstances
of the crime apparently provided by others. (34) Officer Sosa testified that appellant was
referring to statements or questions provided by the polygraph examiner. 

 The record contains no documentation regarding the polygraph examination. Officer
Sosa stated that he did not know whether appellant was given Miranda warnings prior to
being questioned by the polygraph examiner. He also stated that he did not recall the
identity of the polygraph examiner. At the suppression hearing, appellant's counsel argued
that "the lack, most importantly, of any reading of rights or Miranda warnings during all the
questioning that occurred throughout the day by the polygraph examiner" tainted
appellant's post-warning statement. The burden at the suppression hearing was on the
State to prove by a preponderance of the evidence that appellant's statement was
voluntarily given. (35) Here, the record shows that Officer Sosa provided the polygraph
examiner with the case file, which clearly enabled the examiner to question appellant about
the specifics of the crime for which he had been arrested. By doing so, without ensuring
that appellant was provided Miranda warnings prior to being questioned, I conclude that
the officers deliberately engaged in an unconstitutional two-step interrogation strategy
designed to undermine the protections of Miranda. Accordingly, I conclude that the
admissibility of appellant's statement is governed by Seibert. (36) 

 In his postwarning statement, appellant refers to circumstances of the crime
discussed during his unwarned interview with the polygraph examiner. Thus, appellant's
postwarning statement was "related to the substance of [his] prewarning statements" and
must be "excluded absent specific, curative steps." (37) With regard to whether a "substantial
break in time and circumstances" occurred, sufficient to allow appellant to "distinguish the
two contexts and appreciate that the interrogation has taken a new turn," (38) I note that
appellant was moved to three different locations throughout the afternoon: the polygraph
examination was taken at one location, he was then taken before a magistrate at a
different location, and his statement was taken at a third location. However, very little time
elapsed between these events. Officer Sosa testified that "[o]nce we found that there was
an area of deception on the polygraph, we gathered our things or I collected [the
appellant], we gathered our things and he was taken to a magistrate." (39) He also testified
that "[a]fter the magistrate's warning was read, we proceeded to the central hold area at
61 Riesner, which is where the statement was taken." (40) Although the changes in location
may have "distinguished" the contexts for appellant, there was no substantial break in time
and no evidence that appellant was told that his pre-warned statements to the polygraph
examiner were likely inadmissible. (41) I conclude that under the holding in Seibert,
appellant's postwarning statement is inadmissible.

Harm Analysis 


 I next examine whether there is a reasonable likelihood that the admission of
appellant's videotaped statement materially affected the jury's deliberations. (42) A reviewing
court "should calculate, as nearly as possible, the probable impact of the error on the jury
in light of the other evidence." (43) 

 Here, the two surviving victims identified appellant from a photo array as one of the
two assailants involved in the robbery and murder. In appellant's statement, he gave
several versions of events regarding the incident, changing his story as to whether three
or four people were involved and who was driving. However, in each version, appellant
stated that he was in the back seat of the car, did not get out of the car during the incident,
and did not personally shoot anyone. In his statement, appellant states he was in the back
seat as a "lookout." He also states in his statement that he knew the other people in the
car were going to "do a lick," or commit a robbery. 

 As the court of criminal appeals noted in McCarthy, 

A defendant's statement, especially a statement implicating her in the
commission of the charged offense, is unlike any other evidence that can be
admitted against the defendant. See Fulminante v. Arizona, 499 U.S. 279,
296, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991). In Fulminante, the
defendant was convicted through the use of a statement obtained in violation
of his Fifth and Fourteenth Amendment rights. See id. at 287-88. The
Supreme Court noted that

 

[A] defendant's own confession is probably the most probative
and damaging evidence that can be admitted against him. The
admissions of a defendant come from the actor himself, the
most knowledgeable and unimpeachable source of information
about his past conduct. Certainly, confessions have profound
impact on the jury, so much so that we may justifiably doubt its
ability to put them out of mind even if told to do so. (44)


 Here, just as in McCarthy, appellant's statement was sufficient to establish his guilt
as a party. (45) In closing argument, the prosecutor emphasized appellant's statement:

[Prosecutor]: The fourth way [of four ways to find appellant guilty of capital
murder] is as a party, as a lookout to that capital murder, again, promote,
assist in the commission of the offense, he solicits, encouraged, directed or
aided. If you believe this defendant's statement, you take everything he says
as true, says it here twice on this tape: I was a lookout. I was sitting in the
car, looking around, knowing that these guys were going to get a lick. You're
a lookout and you're guilty of capital murder. 


. . . .


I watched that tape and you've got it in evidence and I counted at least seven
times where the defendant in that particular tape says he's either a lookout
or he's watching out.


. . . .


But if you believe what he says in that statement, he's guilty of capital
murder. 


Thus, as in McCarthy, the State used appellant's statement as direct evidence of his guilt
as a party or co-conspirator. (46) As the McCarthy court noted, 

A confession is likely to leave an indelible impact on a jury. "If the jury
believes that a defendant has admitted the crime, it will doubtless be
tempted to rest its decision on that evidence alone, without careful
consideration of the other evidence in the case. Apart, perhaps, from a
videotape of the crime, one would have difficulty finding evidence more
damaging to a criminal defendant's plea of innocence." (47) 

 I also note that during its deliberations, the jury requested appellant's videotaped
statement, among other items. I find that it is impossible to say there is no reasonable
likelihood that the State's use of appellant's statement materially affected the jury's
deliberations. (48) I cannot conclude, beyond a reasonable doubt, that the admission of
appellant's unconstitutionally obtained statement did not contribute to the jury's verdict of
guilty. (49) Accordingly, I would sustain appellant's issue, reverse the judgment of the trial
court, and remand for a new trial. 


 LINDA REYNA YAÑEZ,

 Justice


 


Do not publish. Tex. R. App. P. 47.2(b).

Dissenting opinion delivered and filed

this the 9th day of November, 2006. 
1. Missouri v. Seibert, 542 U.S. 600, 616-17 (2004).
2. Miranda v. Arizona, 384 U.S. 436, 479 (1966). 
3. See Tex. R. App. P. 44.2(a). 
4. See Ford v. State, 26 S.W.3d 669, 672 (Tex. App.-Corpus Christi 2000, no pet.) (citing Oles v.
State, 933 S.W.2d 103, 106 (Tex. Crim. App. 1999)).
5. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).
6. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).
7. See Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The trial court did not file
written fact findings and conclusions of law regarding the voluntariness of appellant's statement as required
by article 38.22, section 6 of the code of criminal procedure. See Tex. Code Crim. Proc. Ann. art. 38.22 §
6 (Vernon 2005); Urias v. State, 155 S.W.3d 141, 143 (Tex. Crim. App. 2004). However, the trial court
complied with article 38.22, section 6, by dictating its findings and conclusions to the court reporter, and those
findings are part of the appellate record. See Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). 
The trial court's findings were:


I am going to admit the statement. I make a specific finding I have found Officer Sosa to be
a credible witness. The arrest warrant is a good arrest warrant. It appeared that the
defendant did freely, voluntarily and knowingly waive his rights to remain silent and give that
statement. There was no testimony of any threats. The behavior of Officer Sosa appears
to be exemplary and it is admitted.
8. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. 
9. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. 
10. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).
11. Miller v. State, 196 S.W.3d 256, 266 (Tex. App.-Fort Worth 2006, no pet. h.) (citing Rhode Island
v. Innis, 466 U.S. 291, 300 (1980)). 
12. See Tex. Code Crim. Proc. art. 38.22 (Vernon 2005).
13. Miller, 196 S.W.3d at 266 (citing Wolfe v. State, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996)). 
14. United States v. Hernandez, No. 05-20158, 2006 U.S. App. LEXIS 23258, at *12 (5th Cir. Sept. 12,
2006) (per curiam) (citing Colorado v. Connelly, 479 U.S. 157, 163-65 (1986); United States v. Bell, 367 F.3d
452, 461 (5th Cir. 2004)); Miller, 196 S.W.3d at 266 (citing Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim.
App. 1995)). 
15. See Tex. R. App. Proc. 44.2(a); Jones v. State, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003);
McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001); Valerio v. State, No. 13-03-243-CR, 2004 Tex.
App. LEXIS 11049, at *10-*11 (Tex. App.-Corpus Christi 2004, pet. ref'd) (not designated for publication). 

16. Jones, 119 S.W.3d at 777; McCarthy, 65 S.W.3d at 52. 
17. Jones, 119 S.W.3d at 777; McCarthy, 65 S.W.3d at 55. 
18. Jones, 119 S.W.3d at 777 (quoting McCarthy, 65 S.W.3d at 55); see United States v. Polanco, 93
F.3d 555, 562-63 (9th Cir. 1996) (analyzing Miranda-Elstad error and finding it harmless because of
"substantial other evidence" to prove the same fact as that contained within the defendant's improperly
admitted statement); Harryman v. Estelle, 616 F.2d 870, 876 (5th Cir. 1980) (when determining whether
admission of non-Mirandized statements is harmless, reviewing court must decide whether, absent that
statement, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish
the guilt of the accused beyond a reasonable doubt; error harmless because other physical evidence was
overwhelming).
19. Appellant's brief was filed June 21, 2004, approximately one week before the U.S. Supreme Court
issued its opinion in Missouri v. Seibert, 542 U.S. 600 (2004). Appellant cites the opinion of the Missouri
Supreme Court, State v. Seibert, 93 S.W.3d 700 (Mo. 2000), which was affirmed by the U.S. Supreme Court. 
20. See Seibert, 542 U.S. at 615. 
21. See id. at 621-22 (Kennedy, J., concurring). The multi-factor test crafted by the four-justice plurality
does not represent the holding in Seibert. The holding of Seibert is found in Justice Kennedy's concurrence. 
See Hernandez, 2006 U.S. App. LEXIS 23258, at *7 n.1 (citing Marks v. United States, 430 U.S. 188, 193
(1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the
assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who
concurred in the judgments on the narrowest grounds.")); United States v. Courtney, 463 F.3d 333, 338 (5th
Cir. 2006); United States v. Williams, 435 F.3d 1148, 1157 (9th Cir. 2006); United States v. Naranjo, 426 F.3d
221, 231 (3rd Cir. 2005). Thus, the holding in Seibert is that a trial court must suppress post-warning
confessions obtained during a deliberate two-step interrogation where the midstream Miranda warning--in
light of the objective facts and circumstances--did not effectively apprise the suspect of his rights. Seibert,
542 U.S. at 621-22 (Kennedy, J., concurring). Although the Seibert plurality would consider all two-stage
interrogations eligible for a Seibert inquiry, Justice Kennedy's opinion narrowed the Seibert exception to those
cases involving deliberate use of the two-step procedure to weaken Miranda's protections. See id.; Williams,
435 F.3d at 1157. Although the majority in the present case recognizes the Fifth Circuit authority cited above,
it nonetheless finds the interpretation rule cited in Marks "inapplicable." The majority cites authority from the
Tenth Circuit in support of its position. See United States v. Carrizales-Toledo, 454 F.3d 1142, 1151 (10th
Cir. 2006). 
22. Jones, 119 S.W.3d at 771.
23. Id. at 771-72. 
24. Id. at 774. 
25. Id. at 775. 
26. Id. 
27. Seibert, 542 U.S. at 616-17.
28. See Oregon v. Elstad, 470 U.S. 298, 314 (1985). In Elstad, the Supreme Court held that "absent
deliberately coercive or improper tactics," "[a] subsequent administration of Miranda warnings to a suspect
who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that
precluded admission of the earlier statement." Id. 
29. Seibert, 542 U.S. at 621-22 (Kennedy, J., concurring).
30. Id. at 622; see also Courtney, 463 F.3d at 338-39. 
31. Seibert, 542 U.S. at 622 (Kennedy, J., concurring).
32. Id.
33. Id.
34. At one point, regarding information that three people were shot and one died, appellant stated,
"that's what they told me over there." Later, appellant made a similar reference that "he told me only three
people got shot." Similarly, at trial, Officer Sosa testified that in appellant's statement, when he stated, "that's
what they told me, three shots," and pointed to the wall, appellant was referring to another officer. 
35. Miller, 196 S.W.3d at 266 (citing Alvarado, 912 S.W.2d at 211). 
36. Seibert, 542 U.S. at 622 (Kennedy, J., concurring).
37. Id. at 621. 
38. Id. at 622. 
39. Appellant was taken before a magistrate around 4:50 p.m. 
40. Appellant's videotaped statement started at 5:16 p.m. 
41. Seibert, 542 U.S. at 622 (Kennedy, J., concurring).
42. McCarthy, 65 S.W.3d at 55 ("If there is a reasonable likelihood that the error materially affected the
jury's deliberations, then the error is not harmless beyond a reasonable doubt."). 
43. Id. 
44. Id. at 55-56 (quoting Fulminante v. Arizona, 499 U.S. 279, 296 (1991)). 
45. The jury charge instructed the jury on the law of parties and the law of conspiracy.
46. See McCarthy, 65 S.W.3d at 54.
47. Id. at 56 (quoting Fulminante, 499 U.S. at 313 (Kennedy, J., concurring)).
48. See id. 
49. See id.