

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00217-CR
No. 07-11-00218-CR

_____

JUAN FRANCISCO PACHECO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 61,408-B & 62,495-B; Honorable John Board, Presiding

May 14, 2013

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

In exchange for his pleas of guilty, Appellant, Juan Francisco Pacheco, was placed on five years deferred adjudication community supervision for possession of a controlled substance[1] and for assault on a family member.[2]  Within hours of being

_____

[1]TEX. HEALTH & SAFETY CODE § 481.115(b) (WEST 2010).

[2]TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (WEST 2011).

granted community supervision, Immigration and Customs Enforcement (ICE) agents arrived at the Potter County Community Supervisions and Corrections Department to take him into custody. ICE subsequently transported him to Dallas for deportation proceedings. Based on these events, Appellant moved to withdraw his pleas of guilty by asserting the State breached the plea agreement. After a hearing on that and other motions, the trial court denied his request. By two issues, he maintains (1) the trial court abused its discretion in not allowing him to withdraw his pleas of guilty and (2) the trial court's citizenship/deportation admonishment was insufficient and rendered his pleas involuntary. We affirm.

## BACKGROUND FACTS

Appellant was born in Mexico and is not a U.S. citizen. On March 1, 2011, with the assistance of counsel and pursuant to a negotiated plea bargain, he entered pleas of guilty to the two offenses referenced above. At the time of his pleas, his immigration status was that of a "resident alien." During the admonishments required by article 26.13 of the Texas Code of Criminal Procedure, the following colloquy ensued:

> Court: And do you understand that by entering into these pleas that could result in you being denied your alien status?
>
> Appellant: Right. Yes.
>
> Court: You understand they could deport you, but that would be up to the federal government?
>
> Appellant: Yes, I understand.
>
> Court: Okay. And you understand . . . if you were deported, it could result in you being denied readmission to the United States?
>
> Appellant: Yes, I understand that.

Court: Have you visited with anybody or talked to anybody about that, what may happen as a result of this plea?

Appellant: No.

Court: Okay. And so no one's made you any promises that you would be able to stay?

Appellant: Yeah.

Court: Correct?

Appellant: That's correct.

The trial court then accepted Appellant's guilty pleas and followed the recommendations of the plea bargain. The trial court also agreed to transfer his community supervision to Colorado.

Shortly after the hearing, Appellant arrived at the Community Supervisions and Corrections Department for his scheduled appointment to begin paperwork for his transfer to Colorado. While there, at the request of ICE, Appellant was detained by the Potter County Sheriff's Department. He was eventually transported to Dallas for a removal hearing.[3]

The next day, Appellant filed a motion to withdraw his pleas and to challenge the trial court's finding that his pleas were voluntary. Appellant contended he did not receive the benefit of his plea bargain and that his pleas were involuntary because he was unaware he would immediately be taken into custody for deportation. On March

---

[3]*See* 8 U.S.C. § 1227(a)(2)(A) for types of convictions which can subject an alien to deportation.

29, 2011, the trial court issued a bench warrant[4] to secure Appellant's presence and a hearing was held on April 7, 2011.

At that hearing, several witnesses testified that it was the policy of the Potter County Community Supervisions and Corrections Department to notify the Immigration and Naturalization Service (INS) whenever a non-U.S. citizen was placed on community supervision. Laura Trevizo, the Department employee who reported Appellant's pleas to INS, further testified that such reports are done at INS's request. Greg Dement, Trevizo's supervisor, and Terry Easterling, the head of the Department, both confirmed that it was the policy of the Department to contact INS whenever a defendant born outside the United States was placed on community supervision. Easterling also testified the Department had been reporting aliens "for the last several years since laws were changed regarding the reporting." He was referring to article 2.25 of the Texas Code of Criminal Procedure entitled "Reporting Certain Aliens to Federal Government" and section 493.015 of the Texas Government Code entitled "Identification of Deportable Aliens."[5]

The trial court read, verbatim, article 2.25 which provides:

A judge shall report to the United States Immigration and Naturalization Service a person who has been convicted in the judge's court of a crime or has been placed on deferred adjudication for a felony and is an illegal criminal alien as defined by Section 493.015(a), Government Code.

---

[4]Appellant had remained in the custody of ICE in Dallas pending disposition of his legal issues in Potter County.

[5]The statutes were added in 1995. *See* Act of May 3, 1995, 74th Leg., R.S., ch. 85, §§ 1, 2, 1995 TEX. GEN. LAWS 856.

4

TEX. CODE CRIM. PROC. ANN. art. 2.25 (West 2005).[6]  The trial court then questioned Easterling regarding a judge's mandatory duty to report "certain aliens" under the statute and he commented that that duty had been delegated to the Department.  The trial court asked, and Easterling confirmed, that the Department acts as the court's agent with regards to that reporting requirement.

Appellant, assisted by an interpreter at this hearing,[7] testified for the limited purpose of exploring his plea offers and acceptance.  Although he testified that he understood his pleas could result in deportation as admonished by the trial court, he perceived he would be allowed time to enjoy supervised release and return to Colorado to work and be with his family.  He acknowledged that no promises were made to him that he would not be deported, and the trial court had cautioned him that the federal government would decide the deportation issue.  He also testified he understood the trial court's admonishments and voluntarily signed the plea papers.

Nevertheless, Appellant urged the trial court to permit him to withdraw his pleas because he denied being guilty of the charged offenses.  His girlfriend, the victim of the assault charge, testified that she had executed an affidavit of non-prosecution on that charge and that Appellant was not guilty of strangling her.

---

[6]Section 493.015(a) provides that an "illegal criminal alien" is one who has been convicted of a felony and is in the State's custody and who (1) has entered the United States without inspection or at any time or any place other than as designated by the United States Attorney General; (2) was admitted as a nonimmigrant and, before the date of the commission of the crime, had failed to maintain the nonimmigrant status under which the alien was admitted or to which it was changed under Section 248, Immigration and Nationality Act (8 U.S.C. Section 1258), or to comply with the conditions of the alien's status; or (3) is a Marielito Cuban as defined in Section 501, Immigration Reform and Control Act of 1986 (8 U.S.C. Section 1365). TEX. GOV'T CODE ANN. § 493.015(a) (WEST 2012).

[7]Although Appellant did not have an interpreter at his plea hearing, the record indicates he had an understanding of the English language.

After the testimony and final arguments concluded, the trial court, sympathetic to Appellant's predicament, ruled that his pleas were made knowingly, intelligently and voluntarily and denied the motion to set aside the pleas. Permission was granted by the trial court to appeal the ruling. *See* TEX. R. APP. P. 25.2(a)(2)(B).

## ANALYSIS

By his first issue, Appellant contends the trial court abused its discretion in not allowing him to withdraw his pleas, and by his second issue, he maintains the trial court's citizenship/deportation admonishment was insufficient and rendered his pleas involuntary. We disagree. Analysis of these issues is intertwined; thus, we will review them simultaneously.

A defendant may withdraw his plea as a matter of right without reason until judgment is pronounced or the case is taken under advisement by the trial court. *See Jackson v. State*, 590 S.W.2d 514, 515 (Tex.Crim.App. 1979). However, after judgment is pronounced, a trial court's denial of a motion to withdraw a plea is reviewed for abuse of discretion. *Id.* A trial court abuses its discretion when it refuses to allow a defendant to withdraw his plea if that ruling lies outside the zone of reasonable disagreement. *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd).

Article 26.13(a) of the Code of Criminal Procedure requires that before accepting a guilty plea, the trial court must give certain admonishments to a defendant, including that a plea of guilty may result in deportation if the defendant is not a citizen of the United States. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (WEST SUPP. 2012).

6

Substantial compliance by the court is sufficient unless the defendant affirmatively shows he was not aware of the consequences of his plea. *Id.* at (c).

Proper admonishments by a trial court establish *prima facie* proof that a guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998). The burden then shifts to the defendant to show he pleaded guilty without understanding the consequences of his plea and consequently, suffered harm. *Id.* The defendant then bears a "heavy burden" to prove in a subsequent hearing that his plea was involuntary. *Cantu v. State*, 988 S.W.2d 481, 484 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd).

When Appellant filed his motion to withdraw his pleas on March 2, 2011, the trial court had already pronounced sentence, placing Appellant on deferred adjudication community supervision. Thus, the decision whether to permit Appellant to withdraw his pleas was a matter within the sound discretion of the trial court.

The record affirmatively demonstrates through Appellant's testimony that he understood the consequences of his guilty pleas and acknowledged that the trial court admonished him on the possibility of deportation by federal authorities. During cross-examination, he testified he voluntarily signed the plea papers. His pleas of guilty were confessions in open court as to the facts alleged in each case. His contention at a subsequent hearing that he was not actually guilty of the offenses but only admitted guilt for the benefit of the plea bargain is irrelevant. *See Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (noting the Constitution does not permit a defendant to disown his solemn admissions in open court that he committed the act

7

with which he is charged simply because it later develops that the State would have had a weaker case).

A plea agreement between the State and an accused is generally a contractual arrangement. *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex.Crim.App. 1996). It is well established that a defendant has the right to have the State honor the terms of a plea agreement once the trial court has accepted the defendant's plea in open court. *Bitterman v. State*, 180 S.W.3d 139, 141 (Tex.Crim.App. 2005). Plea bargains play an extremely important role in the criminal judicial process and numerous federal and Texas cases emphasize the importance of implementing safeguards to protect the due process rights of defendants who waive numerous constitutional rights during that process. *Id.* The State must keep up its part of the agreement or a guilty plea will be rendered involuntary. *Id.*

Appellant argues that he should have been allowed to withdraw his guilty pleas because the State breached the plea agreement and he was unable to realize the benefits of the deal. We disagree. The record demonstrates that Appellant and the State entered into an agreement, approved by the trial court, to grant him deferred adjudication for five years and to allow his community supervision to be transferred to Colorado in exchange for his pleas of guilty. Even though the Community Supervisions and Corrections Department initiated the contact which eventually led to Appellant's arrest and removal proceedings, no promises were ever made to him by the State that his plea would not be reported to appropriate authorities or that he would not be deported. At the hearing, the State also established that if removal proceedings were resolved in Appellant's favor and he was not deported, he would continue on community

8

supervision and be expected to comply with the terms and conditions thereof. The record does not establish that the State failed to perform its responsibilities under the agreement.

We do not overlook Appellant's reliance on *Padilla v. Kentucky*, 2010 U.S. LEXIS 2928, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010). However, *Padilla* deals with the issue of ineffective assistance of counsel as it relates to erroneously advising a client regarding deportation. *Padilla* holds that counsel must inform his client whether his plea carries a risk of deportation. 130 S.Ct. at 1483. The circumstances in *Padilla* are not present in the case before us. To the contrary, the record reflects that Appellant's counsel did advise him that his pleas carried the risk of deportation.

Based on the record before us, we hold that Appellant's pleas were voluntarily entered and that he was properly admonished at his plea hearing in accordance with article 26.13(a) of the Code of Criminal Procedure, including the possibility of deportation. Thus, we find no abuse of discretion in the trial court's denial of Appellant's motion to set aside his pleas. Issues one and two are overruled.

## CONCLUSION

Accordingly, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Publish.

9