

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00056-CR

DAMIAN DAJAUN SQUALLS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th District Court
Smith County, Texas
Trial Court No. 114-0564-20

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

Damian Dajaun Squalls appeals his conviction for the first-degree-felony offense of aggravated sexual assault of a child.[1]  Squalls pled guilty, and the trial court sentenced him to sixty-five years' imprisonment.  Squalls raises several points of error, including a claim that the trial court's failure to properly admonish him on the consequences of pleading guilty rendered his plea involuntary.  We affirm the judgment of the trial court.[2]

## I.     Background

On March 24, 2020, Squalls was indicted for the offense of aggravated sexual assault of a child, stemming from an event in May 2018.  After numerous delays, the parties entered into an "agreed punishment recommendation" and "acknowledgement of admonishments"—collectively referred to as "plea papers"—and convened a hearing for a change of plea to guilty.  Both the agreed punishment recommendation and the acknowledgement of admonishments indicate an "open plea"; however, the recommendation indicates that Squalls agreed to enter an "open plea with a cap of [forty] years TDCJ," and the admonishments indicate "[t]here is **NO PLEA AGREEMENT** recommendation in this case."

The hearing, on January 20, 2023, resulted in a guilty plea.

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the Twelfth Court of Appeals in deciding the issues presented.  *See* TEX. R. APP. P. 41.3.

At the conclusion of a March 8, 2023, sentencing hearing, the trial court, after hearing evidence and argument of counsel, sentenced Squalls to sixty-five years' imprisonment.[3]

Squalls asserts numerous claims regarding his plea and sentencing.

## II.    Involuntary Plea

Squalls first contends that his plea was involuntary because of the lack of admonishment of (a) the punishment range, (b) his inability to withdraw his plea, and (c) the requirement that he register as a sex offender.   He urges, "The trial court failed to admonish Mr. Squalls in accordance with Tex. Code Crim. Proc. art. 26.13(a)(1), (2), and (5)."

It is well recognized that a challenge to the voluntariness of a guilty plea is one of constitutional dimension.  *Meyers v. State*, 623 S.W.2d 397, 402 (Tex. Crim. App. [Panel Op.] 1981).   A guilty plea passes constitutional muster only when it is both voluntarily and intelligently made.  *Brady v. United States*, 397 U.S. 742, 747 (1970).   When reviewing the voluntariness of a guilty plea, the record is viewed as a whole.  *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975).   Voluntariness of a plea is determined by the "totality of the circumstances."  *Griffin v. State*, 703 S.W.2d 193, 195 (Tex. Crim. App. 1986).   "[W]hen a defendant indicates at the plea hearing that he understands the nature of the proceeding and is pleading guilty because the allegations in the indictment are true, not because of any outside pressure or influence, [the defendant] has a heavy burden to prove on appeal that his plea was involuntary."  *Crawford v. State*, 890 S.W.2d 941, 944 (Tex. App.—San Antonio 1994, no pet.) (per curiam).

---

[3]Squalls elected to have punishment assessed by the court.

The failure to give Article 26.13 admonishments is non-constitutional error and "subject to a harmless error analysis under Texas Rule of Appellate Procedure 44.2(b), which examines whether the defendant's substantial rights were affected." *Loch v. State*, 621 S.W.3d 279, 281–82 (Tex. Crim. App. 2021). Rule 44.2(b) provides, "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). "To decide whether Appellant's substantial rights were affected, [we] must independently examine the record as a whole." *Loch*, 621 S.W.3d at 282.

### A. Range of Punishment and Sex-Offender Registration

It is indisputable that the trial court did not orally admonish Squalls regarding the range of punishment or that Squalls would have to register as a sex offender. Nonetheless, we find no reversible error.

The documents signed by Squalls and his attorney included the correct punishment range:

> X **1ST DEGREE** And the range of punishment for such offense is a fine not to exceed $10,000 and imprisonment in the Texas Department of Criminal Justice Institutional Division for life or for any term of not more than ninety nine (99) years or less than five (5) years.

As for warning Squalls that he would have to register as a sex offender, the plea documents also included this statement:

> If the defendant is convicted of or placed on deferred adjudication for an offense for which the person is subject to registration under Chapter 62 of the Texas Code of Criminal Procedure, the Defendant will be required to meet the registration requirements of Chapter 62 of the Code of Criminal Procedure.

Those admonishments appear on consecutive pages in the acknowledgement of admonishments document, and the following page contains the signatures of Squalls and his attorney.

4

The Texas Code of Criminal Procedure allows a trial court to "make the admonishments required by this article either orally or in writing." TEX. CODE CRIM. PROC. ANN. art. 26.13(d) (Supp.).[4] However, if the court only issues the admonitions in writing, "it must receive a statement signed by the defendant and the defendant's attorney that the defendant understands the admonitions and is aware of the consequences of the plea." *Id.* The plea documents signed by Squalls and his attorney include the following statement:

> The Defendant acknowledges that s/he has had sufficient time to, and has, consulted with his/her attorney. The Defendant acknowledges that his/her attorney has explained to him/her the charges in this, the range of punishment and penalty in this case, the rights of the defendant, the consequences of waiving those rights, and any motions or defenses to which the Defendant might be entitled.

"[S]ubstantial compliance by the court" with Article 26.13's required admonishments "is sufficient, unless the defendant affirmatively shows that []he was not aware of the consequences of his plea and that []he was misled or harmed by the admonishment of the court." *Bingham v. State*, 451 S.W.3d 549, 556 (Tex. App.—Tyler 2014, no pet.) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.13(c)). The written admonishments, signed by Squalls and his attorney, demonstrate substantial compliance by the court. *See Lindsey v. State*, 902 S.W.2d 9, 12 (Tex. App.—Corpus Christi–Edinburg 1995, no pet.).[5]

---

[4]The admonishment of deportation consequences, though, must be made orally and in writing. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4), (d), (d-1) (Supp.).

[5]Lindsey complained of the trial court's failure to orally admonish him. But he signed written admonishments and also a document that stated the following: "I understand the Court's written explanation of my constitutional and statutory rights. I understand my rights. I waive all of my rights." The signed document continued, "I understand the admonishments given to me in writing by the Court, I know the range of punishment applicable in this cause, and I am aware of the consequences of my entering a plea of guilty." *Lindsey*, 902 S.W.2d at 12.

We conclude that the trial court's failure to orally admonish Squalls regarding the range of punishment and the sex-offender-registration requirement was harmless.

**B.      Withdrawal of Plea**

Squalls also claims that the trial court failed to admonish him that he could withdraw his plea; alternatively, Squalls also claims that the trial court should have advised him "that he would *not* be able to withdraw his plea if the Court did not follow the State's recommendation." (Emphasis added).  In either case, Squalls claims the existence of a plea agreement and that there was an agreement to recommend a punishment cap of forty years' imprisonment.  Squalls does not contend that he attempted to withdraw his plea, and the record before us indicates that he did not.

First, we must determine what, if anything, the parties promised to do and, then, whether any promise amounts to a plea agreement that may be enforced or that would entitle Squalls to withdraw his plea.  A plea agreement is a contractual arrangement.  Until all of the necessary parties agree to the terms of the contract, the agreement is not binding.  *Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996).  As stated in *State v. Hatter*,

> A valid contract requires proof of the following:  (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.

*State v. Hatter*, 681 S.W.3d 885, 890 (Tex. App.—Houston [14th Dist.] 2023, pet. granted).  "We apply general contract-law principles to determine the intended content of a plea agreement." *Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013) (orig. proceeding).

6

### 1. What Did the State Agree to Do?

The form entitled "Agreed Punishment Recommendation" dated January 20, 2023, states that the parties agreed that Squalls would make an "open plea" with a handwritten note next to it:

8.    (X)    OPEN PLEA   *With a cap of 40 years TDCJ*

Our inquiry would end here if we inferred the word "punishment" before the word "cap." However, the accompanying "Acknowledgement of Admonishments," dated the same day and also signed by Squalls and his attorney, states the following:

> (X)    There is **NO PLEA AGREEMENT** recommendation in this case. This is an **OPEN PLEA**. The Defendant, defense counsel, and State's counsel acknowledge that the State and the Defendant waive the right to a jury trial and the Defendant is entering a GUILTY plea in this case. The judge will assess punishment and penalty within the legal range of punishment for this offense. The Defendant will NOT have the right to withdraw the GUILTY plea and will NOT have a jury trial on the issues of GUILT/INNOCENCE or PUNISHMENT. The judge's punishment decision will be the punishment decision in this case.

Also on that same date, during the guilty plea proceeding, Squalls's attorney addressed the trial court and the following exchange occurred:

> [By Defense counsel]: M[r]. Mikkelsen and I agreed to do a cap of 40 years. However, I told Mr. Squalls, even though M[r]. Mikkelsen and I made that agreement, the Court still can go beyond 40 years. He's fully aware of that. But I think you can do it. I just want to put it on the record.
>
> [By the State]: And that's correct. We just wanted to make sure that's [sic] it's on the record how this works, but that is an agreement between the State and defense that we are not going to pass on.

The court then continued:

> THE COURT: And you understand that, Mr. Squalls, that apparently the agreement they worked out is that they will leave the full range of

punishment open, but nobody is going to be arguing for more than a 40-year sentence - - right? - - 40 years?

> [By Squalls]: Yes.

> THE COURT: So if it's possible, I could still give a sentence higher than that, give a sentence lower than that. But you understand that full range is open. The State, though, is not going to be asking for more than 40 years.

> [By Squalls]: Yes, sir.

> THE COURT: All right. And this is what you want to do after talking with Ms. Melontree?

> [By Squalls]: Yes, sir.

At that point, it was clear that there was an issue of fact whether an agreement had been reached and what that agreement required.

Five weeks later, during sentencing, the State's agreement "to cap its argument to 40 years" was repeated by the parties:

> [By the State]: . . . . [W]hat happened at the last hearing was we took up the plea, pled guilty, and we announced that this is an open plea. The State has agreed to cap is argument to 40 years and that was put on the record. The Court admonished Mr. Squalls about what that means, that that's an agreement between the parties. The Court is not bound by it and so forth.

> But I just wanted everyone to be on the same page and that, of course, the State is going to stand by its agreement and cap its argument today.

> [By Defense Counsel]: And then I filed a grievance file.[6] And even though it's capped at 40, it's a possibility the judge, the Court, can go over 40.

In closing, the State said, "The offense itself calls for a strong response. And hours before we started, we would be asking for 40 years' incarceration. That's what we're going to ask for. We

---

[6]However, the record does not suggest what the grievance addressed.

don't believe anything we heard from the witness stand minimizes the seriousness of this crime." The State promised to ask for no more than forty years, and it did so.

The judgment indicates "OPEN PLEA" under "Terms of Plea Bargain."

The trial court's certification of right to appeal—signed by both Squalls and his counsel—states that this is not a plea-bargain case. This comports exactly with how the trial court handled Squalls's plea and sentencing, judgment, and certification of right to appeal.

An "open plea" signifies "that the defendant plead[ed] guilty without an agreement about the precise punishment he will receive." *Harper v. State*, 567 S.W.3d 450, 454 (Tex. App.—Fort Worth 2019, no pet.) (charge-bargaining case); *see State v. Moore*, 240 S.W.3d 248, 254 (Tex. Crim. App. 2007) (plea is open as to sentencing). In an unpublished opinion, the Tyler Court of Appeals said, "The term 'open plea' is an imprecise legal term of art. In some instances, it has been defined to involve a plea where charge bargaining, but not sentence bargaining, has occurred." *Kassube v. State*, Nos. 12-08-00364-CR & 12-08-00365-CR, 2010 WL 697362, at *2 n.3 (Tex. App.—Tyler Feb. 26, 2010, no pet.) (mem. op., not designated for publication). The record fails to disclose whether any charge bargaining occurred in this case, and Squalls's argument concerns the punishment.

We conclude that the agreement in this case was for an open plea, in exchange for which the State would argue for no more than forty years' imprisonment. We do not find a limitation on punishment; to the contrary, Squalls affirmed that he understood the range from which his punishment would be selected—the full range of punishment—in the context of his agreement.

9

There is no question that the State kept its promise to not argue for more than forty years, which comports with the expressed understanding of all parties and the trial court.

### 2.   Was There an Agreed Punishment Cap?

We next examine the issue of whether there was an agreement that amounted to a plea bargain as to punishment and entitled Squalls to withdraw his plea.  We find no cases squarely addressing this issue, and none have been cited to us by the parties.

"[A]n agreement to cap . . . punishment is a plea bargain." *Menjivar v. State*, 264 S.W.3d 137, 139 (Tex. App.—Houston [1st Dist.] 2007, order); *see Warrick v. State*, 143 S.W.3d 350, 353 (Tex. App.—Waco 2004, no pet.); *Talley v. State*, 77 S.W.3d 904, 906 (Tex. App.—Dallas 2002, no pet.); *see also Delatorre v. State*, 957 S.W.2d 145, 148 (Tex. App.—Austin 1997, pet. ref'd); *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003) ("Sentence-bargaining may be for binding or non-binding recommendations to the court on sentences, including a recommended 'cap' on sentencing and a recommendation for deferred adjudication probation." (footnote omitted) (citation omitted)).

"A plea agreement is a contractual arrangement.  Until all of the necessary parties agree to the terms of the contract, the agreement is not binding." *Ortiz*, 933 S.W.2d at 104.  As stated in *Hatter*,

> A valid contract requires proof of the following:  (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.

10

*Hatter*, 681 S.W.3d at 890. Both the question of whether an agreement was reached, and the terms of the agreement, are questions of fact for the trial court to decide. *See Rodriquez v. State*, 509 S.W.2d 319, 321 (Tex. Crim. App. 1974).

Squalls's implicit assumption that agreeing not to argue for more than forty years is the equivalent to a stipulated forty-year limit (or "cap") on punishment blurs the distinction between *argument* for a sentence—which happens in almost every criminal case without a sentencing recommendation—and *recommendation* of a punishment limit. This distinction is easily illustrated if one imagines plea papers containing an unambiguous, agreed punishment limit of forty years' incarceration, the State becomes incensed during sentencing and argues for a sentence of life, and the trial court nonetheless honors the agreed punishment limit and sentences the defendant to forty years' incarceration.[7] The defendant would not be entitled to withdraw his plea.

"When a plea rests in any significant degree on a promise or an agreement of the prosecutor, so that it can be said to be a part of the inducement, the promise must be fulfilled." *Joiner v. State*, 578 S.W.2d 739, 741 (Tex. Crim. App. [Panel Op.] 1979). "Relief for the failure to keep such a bargain is either specific enforcement of the agreement or withdrawal of the plea, depending upon the requirements of the circumstances in each case." *Id.* (citing *Santobello v. New York*, 404 U.S. 257 (1971)). Our decision might be different if the State failed to honor its agreement to not argue for more than forty years, but those are not the facts of this case.

---

[7]*Cf. Bass v. State*, 576 S.W.2d 400 (Tex. Crim. App. [Panel Op.] 1979) (breach of plea agreement where State agreed to stand mute and *not* recommend a sentence but made argument for a sentence). An express agreement to not recommend a sentence is a punishment recommendation.

11

As noted above in section II(b)(1), Squalls received specific performance of his agreement. However, even if he had not, the agreement did not place any limit on punishment, and his ultimate sentence did not entitle him to withdraw his plea.

In sum, we find no agreed limitation on punishment that would entitle Squalls to withdraw his plea in this case and reject his claim that his plea was involuntary because the trial court failed to inform him that he could withdraw his plea if the court rejected a plea agreement, because he had no right to do so. As expressly stated numerous times in the record before us—none of which drew an objection, query, or motion—Squalls had no right to withdraw his plea because he received a sentence of between five years and ninety-nine years or life. To the extent that Squalls alternatively claims that he had no plea agreement and should have been admonished that he could not withdraw his plea, that was done in his written plea admonishments, as quoted. *See infra* ("The Defendant will NOT have the right to withdraw the GUILTY plea . . . . ").

The record contains no affirmative showing that Squalls was unaware of the consequences of his plea, was misled, or was harmed.[8] To the contrary, the record affirmatively demonstrates that Squalls was informed of the punishment range he faced. Once the trial court "inquired into the existence of a plea agreement" limiting punishment, learned that none existed, and confirmed Squalls's understanding, it "was not required to give the admonishments in Article 26.13(a)(2)." *Hargrave v. State*, No. 06-03-00090-CR, 2004 WL 1554839, at *2 n.4 (Tex. App.—Texarkana July 13, 2004, no pet.) (not designated for publication). The words "cap" and "punishment" do not appear side-by-side anywhere in the record before us.

---

[8]We express no opinion concerning effective representation of defense counsel, as that question is not before us.

We conclude that the trial court did not err in failing to admonish Squalls that he could withdraw his plea.

## B.    Due Process

Squalls also generally claims that the alleged failures to admonish him violated his right to due process. "[A]ny claim that the trial court failed to follow the mandate of [Article 26.13] is separate from the claim that the guilty plea was accepted in violation of due process." *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). In *Davison*, the Texas Court of Criminal Appeals examined the United States Supreme Court's holding of *Boykin v. Alabama*, 395 U.S. 238, 244 (1969), and observed that, "when the record of a criminal conviction obtained by [a] guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed." *Id.* (quoting *United States v. Benitez*, 542 U.S. 74, 84 n.10 (2004)). *Davison* goes on to state,

> For the appellant to prevail on his constitutional claim, therefore, it is not enough that the record is unrevealing with respect to whether he was admonished by the trial court; the record must also be silent with respect to whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent.

*Id.*

Squalls fails to inform us how his due process claim differs from his claims under Article 26.13, and no such distinction is apparent in the briefing.

We have concluded that the trial court was not obligated under Article 26.13 to inform Squalls whether it was rejecting the terms of a plea bargain or afford him an opportunity to withdraw his guilty pleas. Accordingly, we fail to see how Squalls's pleas could have been

13

rendered involuntary or his due process rights could have been affected by the trial court's failure to provide admonishments that were not required under Article 26.13.

We, therefore, reject this claim.

## III.   The Sentence

Squalls complains in his second point of error that the trial court's sentence of sixty-five years constitutes cruel and unusual punishment.[9]   However, without a "timely objection to the trial court raising the issue of cruel and unusual punishment," an appellant "fail[s] to preserve error on this issue." *Contreras v. State*, 369 S.W.3d 689, 690 (Tex. App.—Tyler 2012, no pet.) (citing *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); TEX. R. APP. P. 33.1).

Squalls acknowledges his failure to preserve this issue for review and "raises it [in his appellate brief] in the interest of fairness and due process."  We appreciate counsel's candid concession regarding preservation and earnest briefing on the issue.[10]   However, this Court is constrained to follow the authority of the Texas Court of Criminal Appeals.  "[A]n intermediate appellate court" is "bound to follow the pronouncements of the court of criminal appeals." *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd) (citing *Taulung v. State*, 979 S.W.2d 854, 857 (Tex. App.—Waco 1998, no pet.)); *see also* TEX. CONST. art. V, § 5(a) (Texas Court of Criminal Appeals is final authority for criminal law in Texas); *Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

---

[9]*See* U.S. CONST. amend. VIII.

[10]Squalls also concedes that the trial court's sentence of sixty-five years' imprisonment is within the statutory range of punishment. *See* TEX. PENAL CODE ANN. § 12.32.  Further, Squalls at no time presented the trial court with any evidence of sentences assessed against others convicted of aggravated sexual assault of a child in Smith County or other jurisdictions. *See Solem v. Helm*, 463 U.S. 277, 292 (1983).

"[P]unishment assessed within the statutory limits . . . is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). "If the punishment is within that prescribed by the statute, it is beyond the province of this Court to pass upon the question of excessive punishment." *Darden v. State*, 430 S.W.2d 494, 496 (Tex. Crim. App. 1968).

We overrule Squalls's second point of error.

## IV. Court Costs

In his third point of error, Squalls complains that the trial court's bill of costs, judgment, and order to withdraw funds assessed a "Local Consolidated Fee on Conviction of a Felony."[11] This fee is only applicable to defendants convicted for offenses committed on or after January 1, 2020. *See* TEX. LOC. GOV'T CODE ANN. § 134.101 (Supp.); *Brumfield v. State*, 641 S.W.3d 568, 583 (Tex. App.—Tyler 2022, pet. ref'd). We agree with Squalls that, because he committed his offense in 2018, before the enactment of Section 134.101 of the Texas Local Government Code, the fees in that statute could not be imposed on him. However, we disagree with Squalls's reading of the record and find that five of the six fees assessed in the bill of costs were statutorily authorized.

At the time of his offense, there were several articles in the Texas Code of Criminal Procedure in effect that authorized most of the fees that were later folded into Section 134.101 of the Texas Local Government Code.

In his appellate brief, Squalls argues that the trial court erred to assess a "Local Consolidated Fee on Conviction of Felony." Squalls refers to Section 134.101 of the Texas

---

[11]*See* TEX. LOC. GOV'T CODE ANN. § 134.101(b) (Supp.).

15

Local Government Code.  *See* TEX. LOC. GOV'T CODE ANN. § 134.101.  Squalls is correct that this fee only applies to convictions for conduct that occurred before January 1, 2020.  *See id.* Squalls's conviction resulted from his conduct that occurred on or about May 1, 2018.  However, our review of the bill of costs does not show that this fee was assessed.

The bill of costs includes, among other things, the following:

- A "Clerk of the Court" fee;

- A "County Records Management and Preservation" fee;

- A "County Jury Fund" fee;

- A "Courthouse Security Fund" fee;

- A "County and District Court Technology Fund" fee; and

- A "County Specialty Court Account" fee.

These six fees comprise the "Local Consolidated Fee on Conviction of Felony."  *See* TEX. LOC. GOV'T CODE ANN. § 134.101(b).

The 2018 Texas Code of Criminal Procedure, though, authorized five of these fees in various articles.  Former Article 102.005(a) authorized a "Fee to Clerks" upon conviction for an offense "in a county court, a county court at law, or a district court."  Act of May 17, 1985, 69th Leg., R.S., ch. 269, § 1, sec. 102.005, 1985 Tex. Gen. Laws 1300, 1302 (repealed 2019).  Such a defendant was also required to pay a fee for a technology fund by former Article 102.0169(a).  Act of May 31, 2009, 81st Leg., R.S., ch. 1183, § 1, 2009 Tex. Gen. Laws 3753, 3753 (amended 2019) (current version at TEX. CODE CRIM. PROC. art. 102.0169).  A defendant convicted in one of those courts was required to "pay a fee of $25 for records management and preservation

16

services" by former Article 102.005(f). Act of May 28, 2005, 79th Leg., R.S., ch. 804, § 2, 2005 Tex. Gen. Laws 2775, 2775–76 (repealed 2019). Former Article 102.0045(a) required persons "convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle" to pay a fee "to be used to reimburse counties for the cost of juror services." Act of May 27, 2005, 79th Leg., R.S., ch. 1360, § 5, 2005 Tex. Gen. Laws 4255, 4256 (repealed 2019). "A defendant convicted *of* . . . a felony offense in a district court," as was Squalls, was required to pay a security fee by former Article 102.017. Act of March 12, 1997, 75th Leg., R.S., ch. 12, § 1(a), 1997 Tex. Gen. Laws 51, 51 (amended numerous times) (current version at TEX. CODE CRIM. PROC. art. 102.017). The only fee included in Section 134.101 of the Texas Local Government Code for which we cannot find a pre-2020 antecedent is Section 134.101's "the county specialty court account." *See* TEX. LOC. GOV'T CODE ANN. § 134.101(b)(6).[12]

Because we can find no statutory authority for the "County Specialty Court Account" fee for Squalls's date of offense, we modify the trial court's bill of costs, judgment, and order to withdraw funds[13] by subtracting $25.00, the amount of the "County Specialty Court Account"

---

[12]Squalls's point of error complains of the imposition of Local Government Code Section 134.101's "Local Consolidated Fee on Conviction of Felony." TEX. LOC. GOV'T CODE ANN. § 134.101. As we have explained, no such fee is listed in the bill of costs. We agree with Squalls that that fee does not apply to him and his conviction because of the date of offense. We have addressed the six itemized fees in Section 134.101(b) and determined that five of them had statutory authorization for Squalls's offense date. In his appellate brief, Squalls lists all of the imposed fees in the bill of costs and claims all of those are "enumerated in § 134.101." That is incorrect. As explained above, there are six enumerated fees required by Section 134.101(b), and we have addressed those six above. We will not address the other fees because Squalls has presented no briefing or argument as to their propriety. *See* TEX. R. APP. P. 38.1(i). As for Squalls's complaint that the bill of costs includes a "Consolidated Court Costs Fee," that assessment of $133.00 represents the standard court cost fee for conviction of a felony in 2018. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 209, § 62(a), sec. 133.102, 2003 Tex. Gen. Laws 979, 993 (effective Jan. 1, 2004).

[13]*See Hill v. State*, No. 12-21-00158-CR, 2022 WL 3012453, at *7 (Tex. App.—Tyler July 29, 2022, pet. ref'd) (mem. op., not designated for publication) (citing *Sturdivant v. State*, 445 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)), *cert. denied sub nom. Hill v. Texas*, 143 S. Ct. 1031 (2023).

17

fee.  The bill of costs, judgment, and order to withdraw funds are modified to show court costs of $326.50.

## V.      Conclusion

We affirm the trial court's judgment, as modified.


Charles van Cleef
Justice

Date Submitted:       March 7, 2024
Date Decided:         May 15, 2024

Do Not Publish